(No. 39236, 39237 Cons.—

BONNIE KLATT, Appellee, *vs.* COMMONWEALTH EDISON COMPANY *et al.,* Appellants.

*Opinion filed November 19, 1965.*

482

Fearer & Nye and Hall, Meyer, Fisher, Van Deusen, Holmbert & Snook, both of Waukegan, (Gerald W. Fearer and Lloyd A. Van Deusen, of counsel,) for appellant Commonwealth Edison Company.

O'Brien, Burnell, Puckett & Barnett, of Aurora, (W. C. O'Brien and Wilson D. Burnell of counsel,) for appellant Margaret V. Klatt.

BURRELL & HOLTAN, of Freeport, and SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of Waukegan, (WILLIAM A. HOLMQUIST, of counsel,) for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

These are appeals from the judgment of the Appellate Court, Second District, which, in a suit for personal injuries (1) affirmed the orders of the circuit court of Lake County denying defendants' post-trial motions for judgment notwithstanding the verdict, (2) reversed the trial court's order granting defendants a new trial, and (3) remanded the cause with directions to reinstate the jury verdict awarding $85,000 in damages to the plaintiff. Both defendants challenge the appellate court's ruling concerning the motion for new trial, the affirmance of the trial court's denial of defendants' post-trial motions, and the appellate court's ruling concerning a witness who testified at the trial under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1963, chap. 110, par. 60). Defendant Margaret V. Klatt, administratrix of the estate of Herman B. Klatt, deceased, also appeals from the appellate court's denial of her defense under the Statute of Limitations to a third-party complaint filed against her by defendant Commonwealth Edison.

Important questions being presented, we granted both defendants' petitions for leave to appeal.

For convenience, we set forth the appellate court's substantially correct and detailed history of the litigation and summary of the testimony adduced at the trial (55 Ill. App. 2d 120):

"On August 23, 1961, plaintiff Bonnie Klatt commenced an action against Commonwealth Edison Company, a corporation, hereinafter referred to as 'defendant Edison', and Margaret V. Klatt, administrator of the estate of Herbert B.

Klatt, deceased, hereinafter referred to as 'defendant administator', to recover damages for personal injuries received in an automobile collision. In her complaint she alleged that at the time of the collision she was a guest passenger in an automobile being driven by Herbert B. Klatt, deceased, her father, who at the time was an agent or servant of defendant Edison. Separate answers were filed by each defendant. The answer of defendant Edison denied that the deceased was its agent at the time of the collision and denied that he was operating the automobile within the course of his employment. In addition defendant Edison filed a third party complaint alleging in substance that the liability, if any, of defendant Edison was predicated upon the doctrine of respondeat superior so that if defendant Edison is liable to plaintiff the defendant administrator is liable to defendant Edison. Issues being joined on these pleadings, the cause was submitted to a jury. The jury returned a verdict in favor of plaintiff and against both defendants and fixed the damages at $85,000. Thereupon the jury also rendered a verdict on the third party complaint as follows:

'If you find in favor of the defendant, Commonwealth Edison Company, on the complaint of the plaintiff, Bonnie Klatt, you will have no occasion to use this form of verdict; if you find against the defendant, Commonwealth Edison Company on the complaint of the plaintiff, Bonnie Klatt, the Court directs that you will then return the following verdict inserting in the blank space provided the same amount that you have found against Commonwealth Edison Company in favor of Bonnie Klatt if you have so found.'

'We the jury find in favor of the third party plaintiff, Commonwealth Edison Company, and against the third party defendant, Margaret V. Klatt, administrator of the estate of Herbert B. Klatt, deceased, and assess the damages of the third party plaintiff, Com-

monwealth Edison Company, in the amount of $85,-000.00.'

Judgment was entered upon both of these verdicts. Separate post-trial motions were filed by each defendant for a judgment notwithstanding the verdict and for a new trial. The trial court heard arguments on the motions and filed a rather extensive opinion covering the major points raised by the defendants on their post trial motions. The trial court denied both post-trial motions for judgment notwithstanding the verdict but granted both motions for a new trial. The sole ground upon which the motions for new trial were granted, as shown by the court's opinion, was that the trial judge was of the opinion that he had committed error with respect to testimony of one of the witnesses. Upon petition to this court we granted leave to appeal from the order granting a new trial. Thereupon defendant Edison filed a cross appeal appealing from the order granting a new trial on its third party complaint and also appealing from the order denying its motion for judgment notwithstanding the verdict. Defendant administrator also filed a cross appeal, appealing from the order denying its motion for judgment notwithstanding the verdict.

"The issues presented to this court for decision require a rather extensive analysis of the facts in this case. The record in the case discloses that Herbert B. Klatt was employed by defendant Edison as a division field agent working out of the Dixon office with 40 years of service. The territory handled by the Dixon office covers Stephenson County, of which Freeport is the county seat, but does not cover Winnebago County, of which Rockford is the county seat. The work of Herbert B. Klatt consists of traveling about obtaining right of ways [sic], getting permission to trim trees and kindred matters. He was furnished with an automobile by defendant Edison to be used in the performance of his duties. He was pretty much his own boss as to what he did and was given considerable leeway in the man-

ner of performing a particular job. His normal working day ended at 5 :00 p.m. and if he was out in the field during the day and finished his work prior to 5 :00 p.m. he was expected to return to the office until that time. On the day of the occurrence which was August 26, 1959, Klatt checked out of the Dixon office at about 9 :00 a.m. to go to Freeport. On this day defendant Edison had two engineering projects going on in the Freeport area. One was a road improvement project east of Freeport on Route 20 and another was northeast of Freeport near the town of Dakota, all in Stephenson County. The main traveled highway from Dixon to Freeport is a north and south highway known as Illinois 26 and the distance is about 37 miles. Rockford is east of Freeport and the two cities are connected by U.S. Route 20. This distance is about 28 miles. There is also a highway extending southwest along the Rock River from Rockford to Dixon known as Route 2 and it was on this highway that the collision in question took place. The distance from Rockford to Dixon is approximately 41 miles on Route 2.

"On the day in question the plaintiff was a student in nurses training at the Rockford Memorial Hospital in Rockford. During the week she stayed in the nurses residence and on days off or vacations she resided with her parents in Dixon. At about 2 :15 p.m. Herbert B. Klatt called for his daughter at the dormitory to take her home for a visit. By prearrangement he had agreed to pick her up if he had business in that area. Leaving Rockford they took Route 2 toward Dixon. The collision occurred at about 3 :00 p.m. between the city of Oregon and the city of Dixon about two and a half to three miles north of Dixon.

"The physical conditions existing at the time of the occurrence are important. The collision occurred on a long sweeping curve. As one proceeds South on Route 2 and enters the curve, the curve is from 1500 to 1600 feet long and to a person operating an automobile in a southerly direction

the curve curves to the driver's right. The highway around the curve is banked so that the east side of the highway is approximately 1 foot higher than the west side. Along the west side of the curve there had been constructed a gutter which was about 3 feet wide and 6 inches deep and extended all the way around the curve. From the west edge of the highway there was a section of gravel, then a grassy section which sloped into a drainage ditch. The weather conditions were very bad at the time of the occurrence. It was raining very hard, visibility was very poor and cars were using their headlights. Water was flowing on the highway around the curve from east to west and the gutter was filled with water. The car in which plainiff was driving entered the curve at a speed of from 50 to 55 miles per hour and after it had entered the curve it suddenly partially left the highway so that the two right wheels were off the paved portion of the highway. The car continued in this position for a distance of approximately 1,000 feet without diminishing its speed, and was bouncing up and down quite a bit. Suddenly the car came across the highway to the east side in a diagonal course where it was struck broadside by an oncoming car proceeding north on Route 2. Behind the car which struck the car in which plaintiff was riding was another car being operated by a gentleman known as James Rice, who testified for plaintiff and whose car was also struck as an aftermath of the initial collision. As a result of this collision the plaintiff was very seriously injured and her father subsequently died from the injuries which he received. The plaintiff could not remember anything which occurred after she and her father left Oregon."

Defendants both contend that, as a matter of law, there is insufficient evidence in the record to establish wilful and wanton misconduct on the part of Herbert B. Klatt and that plaintiff has not introduced evidence establishing her freedom from contributory wilful and wanton misconduct.

It has been previously observed that "wilful and

wanton misconduct has been defined in myriads of cases, each one reiterating or embellishing the phraseology of its predecessors. (*Streeter* v. *Humrichouse,* 357 Ill. 234; *Bartolucci* v. *Falleti,* 382 Ill. 168; *Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569; *Mower* v. *Williams,* 402 Ill. 486; *Myers* v. *Krajefska,* 8 Ill.2d 322, 328.) One ofted [sic] quoted definition is that set forth in *Schneiderman* v. *Interstate Transit Lines, Inc.,* 394 Ill. 569, at p. 583 : 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' In the recent case of *Myers* v. *Krajefska,* 8 Ill.2d 322, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin-line definition could be made." *Hering* v. *Hilton,* 12 Ill.2d 559, 562.

Here, considering the evidence in a light most favorable to the plaintiff, which, of course, must be done (*Schneiderman* v. *Interstate Transit Lines, Inc.* 394 Ill. 569, 581), we find that Klatt, while driving around a long curve on a very rainy day of limited visibility, upon going off the pavement drove approximately 1000 feet at 50-55 miles per hour without reducing his speed and then swerved back onto the pavement and into the oncoming traffic. We believe that reasonable men might properly denominate these actions as indicating wilful and wanton misconduct under the above quoted definition. The question accordingly was properly one for the jury and thus no error has been committed with

regard thereto. (*Hering* v. *Hilton,* 12 Ill.2d 559; *Amenda* v. *Suits,* 8 Ill.2d 598; *Myers* v. *Krajefski,* 8 Ill.2d 322. Defendants cite *Clarke* v. *Storchak,* 384 Ill. 564, for the proposition that there has been no indication of wilful and wanton misconduct on the part of Klatt and that there should have have been a directed verdict for defendants. However, the evidence here most favorable to plaintiff, as set forth earlier, indicates that Klatt drove along the shoulder of the curve during a rainy day for approximately 1000 feet without reducing his speed, and in attempting to re-enter the highway swerved into the oncoming traffic. These circumstances conspicuously distinguish the instant cause from *Storchak,* where for some uncertain reason defendant lost and did not regain control of the operation of his vehicle up to the time of the accident.

Since plaintiff testified that she could not recall any circumstances concerning the accident, there is no direct testimony as to her freedom from contributory wilful and wanton misconduct, nor was there any evidence introduced concerning habits of due care on the part of the plaintiff. However, the plaintiff did testify that she was riding in the right front seat of the Klatt automobile prior to the accident and before going through Oregon, and that her father was then driving properly, and witness James Rice stated that he observed her in the right front seat at the time the accident occurred. Under these circumstances, we believe it was for the jury to determine whether plaintiff was free from contributory wilful and wanton misconduct, as "evidence of due care need not be established by direct and positive testimony, but may be inferred from all the facts and circumstances shown to exist prior to and at the time of the collision. [Citing cases]." *Pennington* v. *McLean,* 16 Ill.2d 577, 582. See also *Ruspantini* v. *Steffek,* 414 Ill. 70.

The next question with which we are concerned is the

propriety of the appellate court's reversal of the trial court's order granting defendants a new trial.

The only testimony at the trial which tends to indicate wilful and wanton misconduct on the part of Herman B. Klatt is that of witness James Rice, who testified that as he was driving his automobile in a northerly direction on Route 2 on August 26, 1959, behind the car of Charles Hasson, he observed the Klatt automobile coming from the opposite direction and going off the road to its right. With two wheels off the pavement, the witness stated, the Klatt car, at an estimated speed of 50-55 miles per hour, traveled approximately 1000 feet "bounding quite a bit," without reducing its speed. It then abruptly swerved back onto the pavement, into the opposing lane of traffic, and collided with the automobile of Hasson.

In order to controvert this testimony, defendant Edison called John Groenwald, an employee of Commonwealth. He testified that as he was driving his company truck on Route 2 toward Dixon, he came upon the accident in question. Other testimony in the record, coupled with that of his own, establishes that he came upon the scene shortly after the accident occurred. When questioned concerning the existence of tire marks on the shoulder of the pavement where the Klatt car allegedly had left the pavement, the following transpired:

"Q. Did you examine the shoulder on the low side of the curve after you arrived there?

A. Yes.

Q. State whether or not you saw any tracks on the shoulder on the low side of the curve.

Mr. Burrell: (Attorney for plaintiff) I object to that.

The Court: The objection is going to be sustained."

On cross-examination by counsel for defendant administrator, the following testimony was elicited:

"Q. And did you examine the territory around the accident?

A. I did. I walked around the cars to see where it had been hit. I also looked at the shoulder on the other side of the road to see why he got in that position.

Q. You say the shoulder on the other side of the road. Do you mean the other side of the road from where the automobiles were?

A. Yes, from where I found the cars.

Q. That is the low side of the highway, the inside of the curve?

A. The inside of the curve.

Q. And did you look back toward Oregon or back to the south from where the automobiles were?

Mr. Burrell: Is this north?

Mr. O'Brien: North.

The Witness: Toward Oregon would be northerly.

Mr. O'Brien: Q. Along the waterway?

A. Yes, I went back to the waterway to where the culvert goes under, where the spillway goes across the highway quite a ways.

Q. Were there any tire marks or tracks on that side of the park?

Mr. Burrell: I object to that. It has to be connected up.

The Court: Well, first he has to find out if there were. He may answer that much. Were there?

A. No.

The Court: All right.

Mr. O'Brien: Q. Had you parked your truck on the right hand side of the highway, that would be the low side—or, the shoulder rather?

A. After they had came with the ambulances and taken everybody away I pulled my car off of the highway and let the traffic go through; my truck off.

Q. Did you have some kind of a traffic signal on your truck that would stop traffic?

A. I have a red light on my truck.

Q. Yours was the truck there that stopped the other traffic?

A. I had the traffic backed up in their lane all the way around the curve.

Q. When you drove over to the parking on the right hand side of the road with your truck, did the tracks of your truck show?

A. Yes.

Q. Did they show clearly?

A. Yes.

Mr. Burrell: I object and move to strike it. It is immaterial.

The Court: I presume it is for laying a foundation, I don't know. It may stand.

Mr. O'Brien: Q. Were there any other tracks there on that side of the highway?

Mr. Burrell: I object.

A. Not in that area.

The Court: Just a minute, please. Well, he has answered, 'Not in that area'.

Mr. Burrell: It is immaterial.

The Court: He didn't find any.

Mr. O'Brien: Q. Did you look back to the north, back toward Grand Detour on the parking—or, I should say on the shouder of the highway? Did you look to see if there were any marks; automobile tracks?

Mr. Burrell: I object.

The Court: Objection sustained, Mr. O'Brien, unless you can first lay the foundation.

Mr. O'Brien: I am trying to prove a negative, of course, I have to ask the gentleman if he looked and if there were any there.

Mr. Burrell: I object to the statement.

The Court: Objection sustained.

Mr. O'Brien: When we are finished with this witness, may I make an offer of proof?"

An offer of proof was then made outside the presence of the jury. The testimony continues:

"Q. Mr. Groenwald, at the time that you drove your truck on to the shoulder on the low side of the curve, did the marks of your truck show clearly in the shoulder?

A. Yes.

Mr. Burrell: I object.

The Court: That was already in, about whether his marks showed, is that correct?

Mr. O'Brien: That is right.

Q. Did you in the course of the investigation examine that shoulder to see if there were marks of any other motor vehicle on the shoulder?

A. Yes, I did.

Q. And did you find out whether or not there were the marks of any other vehicle on that shoulder?

A. I didn't find any.

Q. Can you answer this question; were there any other marks there other than the marks of your truck?

A. I didn't find any.

Q. Did you look?

A. Yes.

Q. Did you look for the specific purpose of determining whether or not there were any other tire marks there?

A. I did.

Mr. O'Brien: I offer that in evidence.

The Court: All right. It was my understanding—

Mr. O'Brien: You understand, your Honor, there has been evidence that this automobile was off the road for one thousand feet, and I think the only way I can combat that by negative evidence is to show a man who at the time looked for them and they weren't there."

The trial court, solely upon the basis that it had erred

in sustaining an objection to this offer of proof, thus excluding this evidence from the jury, ordered a new trial on all issues in the cause. The appellate court reversed, since in its opinion the substance of the testimony sought to be elicited from this witness had actually been heard by the jury on cross-examination by counsel for defendant administrator, and if any error had occurred, it was harmless. We disagree with the appellate court. It will be conceded that, as the trial court puts it in the memorandum of decision below, "* * * bits and pieces of this testimony did go before the jury; however, the only mention of tire tracks that was heard by the jury was on cross-examination. Gronewald [sic] was Commonwealth Edison's witness and his testimony was rejected on direct examination. The Court has no idea of what impression this left with the jury." Moreover, as the trial court points out, sustaining the objection precluded later argument by defendants on this evidence.

It is clear that this "negative" evidence is competent (*Neuenschwander* v. *Hornoff*, 273 Wis. 471, 78 N.W.2d 770; Wigmore on Evidence, 3rd ed., vol. II, sec. 664, p. 778), and, since the only evidence tending to establish wilful and wanton misconduct was the alleged traveling at a high rate of speed along the shoulder of the pavement just prior to the accident, the exclusion of testimony indicating the absence of tire marks thereon, when coupled with other testimony that it was raining very hard at the time of the accident, leaving the inference that if the car had been traveling along the shoulder, tire marks would have been apparent, may hardly be called harmless error. This evidence was actually the "cornerstone of the defense" on the issue of wilful and wanton misconduct.

Moreover, it must be remembered that the trial court, in reaching a determination to award a new trial, is vested with discretion, and absent a clear abuse thereof, its decision should not be disturbed on appeal. (*Department of Public Works and Buildings* v. *Russell*, 28 Ill.2d 491;

*In re Estate of Velie,* 318 Ill. App. 550.) We therefore hold that the appellate court erred in reversing the trial court's order granting defendants a new trial.

Defendant Edison next contends that Klatt was not acting within the scope of his employment at the time of the accident, and vigorously urges that, even if Klatt was within the general scope of his employment at the time of the accident, liability should nevertheless not attach under the doctrine of *respondeat superior.* Much reliance for this proposition is placed upon section 242 of the Restatement of the Law, Agency, (2d) vol. III, which states: "A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment."

A company rule of defendant Edison in force at the time of the accident in substance provides that unauthorized persons unconnected with company business are not to be transported in company vehicles. The record establishes that Klatt had received a copy of this rule. Under these circumstances there can be no question that defendant Edison would be relieved of liability under the Restatement rule. The question for decision here is whether that rule in substance should be followed in Illinois.

The basic reason underlying this view, as stated in the Restatement reporter's notes, is "* * * that by accepting the hospitality of the servant and causing him to commit a breach of duty, the intruder had so identified himself with the servant that it is just that his claim against the master should be forfeited. Further, although the servant drives 'in scope of employment', he is also driving for the benefit of the intruder." Restatement, Agency (2d,) vol. III, sec. 242, at pages 384-385. (Reporter's Notes).

This position is exemplified in cases such as *Union Gas*

& Electric Co. v. Crouch, 123 Ohio St. 81, 174 N.E. 6 (overruling the prior contrary position as announced in *Higbee Co. v. Jackson*, 101 Ohio St. 75, 128 N.E. 61), and *Mayhew v. DeCoursey*, 135 Kan. 184, 10 P.2d 10. For other cases in accord with this view, see Restatement, Agency (2d), vol. III, sec. 242, page 385. (Reporter's Notes).

There is, however, a clear line of authority contrary to the view expressed by the Restatement. The Supreme Court of Errors of Connecticut, for example, in rejecting the Restatement view, observed: "The Connecticut doctrine rests on the broader ground that every man, who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others, while they are engaged upon his business and within the scope of their authority. [Citation]. Public policy requires that the master shall be held liable for negligent acts of the servant performed in the course of his employment even though they are not specifically authorized or at times contrary to instructions. [Citing cases.] * * * '[T]he law is not so futile as to allow a master by giving secret instructions to his servant to discharge himself from liability.' " (*Kuharski v. Somers Motor Lines*, 132 Conn. 269, 43 A. 2d 777.) Cases in accordance with this latter view are as follows: *Meyer v. Blackman*, 31 Cal. Rptr. 36, 381 P.2d 916; *Barall Food Stores v. Bennett*, 194 Okla. 508, 153 P.2d 106; *Trico Coffee Co. v. Clemens*, 168 Miss. 748, 151 So. 175; *Ball v. Whitaker*, 47 Tenn. A. 677, 342 S.W.2d 67; *Jaeger v. Sidewater*, 366 Pa. 481, 77 A. 2d 434. See also Restatement, Agency (2d), vol. III, sec. 242, pages 385-386. (Reporter's Notes).

Many of the cases cited above allow recovery against the master only where the servant has wilfully and wantonly injured the third party. It is clear that our guest statute (Ill. Rev. Stat. 1963, chap. 95½, par. 9—201) would like-

wise restrict recovery should this trend of case law be followed, at least where motor vehicles are involved.

Our research and that of counsel has revealed no Illinois Supreme Court authority squarely facing this problem. In *Hayes* v. *Sampsell,* 274 Ill. 258, it was held that the master was liable for the tortious conduct of its servant motorman where a third party, a minor, was injured thereby after accepting the servant's invitation to ride gratuitously on a streetcar. In that case the court pointed out that it was dealing with a child of tender years who could not be expected to adhere to adult standards.

Although in *Hayes* v. *Sampsell,* the court in *obiter dictum* agreed with the general rule that the master is liable for wilful and wanton acts of his servant injuring an adult third party while in the general course of employment, even though the third party be a trespasser, we believe the situation distinguishable from the facts in the case at bar. As stated in the comment to section 242 of the Restatement, "Ordinarily, the possessor of land or of a chattel is subject to liability for the conduct of his servants acting within the scope of employment which harms trespassers as he would be for his own conduct, in accordance with the rules stated in the Restatement of Torts relating to the liability of the possessor of land to trespassers. If, however, the person entering the master's land or vehicle does so at the invitation of or with the permission of a servant who has no authority or apparent authority to give such invitation or permission, and the one entering has otherwise no privilege to enter the land, the master is not subject to liability to such person because of the conduct of the inviting servant. The master is, however, subject to liability to the intruder for his own harmful conduct or for the conduct of other servants as he would be had no invitation been extended."

After thorough consideration of the foregoing divergent authority, we conclude that the Restatement embodies the

more sound reasoning and logic. We accordingly adopt that view. Defendant Edison thus cannot be held responsible to plaintiff here for the defalcations of the former's errant servant under the doctrine of *respondeat superior*.

It is urged, however, that the evidence adduced at the trial warrants an inference that defendant Edison was guilty of active negligence in failing to provide Klatt with a mechanically sound company vehicle and that this, in fact, caused the accident and resultant injuries to plaintiff. We believe this contention is based upon pure speculation and conjecture, but even if this inference could legitimately be drawn, it would be incumbent upon the plaintiff to prove wilful and wanton misconduct upon the part of defendant Edison before liability would attach thereto, and there is absolutely no evidence in this record tending to indicate that such is the case. As stated earlier in this opinion, where the trespassing third party is within the company vehicle or upon the company premises pursuant to an erring servant's invitation, no duty to the third party is owed by the master concerning injuries to the third party caused by negligence, even if wilful and wanton, on the part of the inviting servant. If the injuries, however, are in fact caused by other servants acting within the scope of their employment, or by the master himself, the third-party trespasser may recover against the master under the ordinary rules of the tort law concerning liability for injuries to trespassers.

Since our adoption of the Restatement rule wholly relieves defendant Edison of any liability herein, there exists no reason for its continued presence as a party to this cause, and the trial court is hereby directed to dismiss defendant Edison as a party defendant at the new trial.

Our disposition of this appeal as to defendant Edison renders it unnecessary to discuss the contentions of defendant administrator concerning the former's third-party complaint against the latter, as the basis therefor is no longer in existence. Also moot is the question concerning section

60 of the Civil Practice Act, as defendant Edison, whose employee was allowed to testify thereunder, will no longer be a party to the action.

For the foregoing reasons, the judgment of the appellate court is reversed in part and affirmed in part, and the cause is remanded to the circuit court of Lake County for a new trial to be conducted in accordance with the views expressed in this opinion.

*Reversed in part and affirmed in part, and remanded, with directions.*