MARGARET HARVEY, Plaintiff-Appellant and Cross-Appellee, *v.* NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 15100

Opinion filed June 15, 1979.

TRAPP, J., dissenting.

Joseph W. Phebus and Betsy Pendleton Wong, both of Phillips, Phebus, Tummelson & Bryan, of Urbana, for appellant.

Arthur D. Nicol, of Hatch & Baker, of Champaign, for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

This action resulted from injuries sustained by the plaintiff, Margaret Harvey, while a passenger in an automobile which stalled on the tracks of the Norfolk & Western Railway, and was struck by one of its trains. Plaintiff filed a complaint which was subsequently amended to include three counts. Count I charged defendant with negligence as to the maintenance of the crossing based on both the common law standard of negligence and the defendant's alleged violation of certain Illinois Commerce Commission (ICC) Rules. Count II sought recovery pursuant to section 73 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 77) based upon defendant's alleged violation of specified ICC rules. Similarly, section 73 of the Act was the basis of count II which charged the defendant with wilfully violating these same ICC rules.

Following the close of the evidence and during the jury instruction conference, defendant moved to withdraw portions of count I and all of

counts II and III from the consideration of the jury. The trial court granted that motion. The jury returned a verdict in favor of the plaintiff under count I for negligence and awarded her $7,500 compensatory damages. Plaintiff appealed from that verdict and judgment challenging, in addition to certain other rulings by the trial court, the propriety of the withdrawal of counts II and III from the jury.

The evidence disclosed that on August 7, 1975, at approximately 6:45 p.m, the plaintiff was a passenger in an automobile being driven by Anna Mettler which was proceeding in a northerly direction on Coler Avenue in Urbana, Illinois. As they approached the defendant's railroad crossing, which was marked by "crossbuck" signs, Mettler stopped the car a few feet from the southernmost rail and she and the plaintiff checked the crossing for an approaching train. Neither the plaintiff nor Mettler saw a train or heard a whistle and Mettler proceeded onto the crossing. As the vehicle passed over the first rail, which both witnesses described as very "bumpy" and "rough," the engine stalled. At approximately the same time, and as Mettler unsuccessfully attempted to restart the automobile, the two heard a train whistle and for the first time observed an eastbound train which was a short distance to the west of the crossing. Mettler immediately abandoned her automobile, but the plaintiff was unable to get out before the vehicle was struck by the train. The plaintiff was thrown from the car upon impact.

The defendant's railroad tracks which cross Coler Avenue run in a general northwest to southeast direction. Several witnesses gave descriptions of the foliage located in the area south of the defendant's track and west of Coler Avenue (the direction from which the train came). Mettler testified that various shrubs, weeds, bushes, and trees extended to a railroad signal box which was approximately 55 feet west of the crossing. This growth, which at certain points she estimated to be 10 to 12 feet high, had obstructed her view of the approaching train. The plaintiff's description of this area was substantially similar. By her account, this growth extended as far back as she could see from where the automobile was stopped at the crossing.

The plaintiff's son, Ed Harvey, Jr., also testified as to the various types of vegetation in this area. The area closest to the crossing and adjacent to the south track included high weeds and shrubs. Beyond this were woody-type plants 5 to 6 feet in height. Approximately 50 to 75 feet from the crossing were tree-type plants 10 to 12 feet high which grew directly adjacent to the tracks. He stated that in his opinion this area of growth had neither been sprayed nor cut back for some time, based upon the height of the foliage and the leafy nature of the brush and trees.

Thomas Berns, a civil engineer, was called by the plaintiff as an expert witness. In addition to offering his opinion that the crossing in

question was more than ordinarily hazardous, Berns also gave testimony regarding certain ICC rules which had allegedly been violated by the defendant. Berns testified as to the factors that are relevant to ICC Rules 204 and 205 of General Order 138 as they applied to the crossing in question. The trial court, however, refused to permit him to testify that in his opinion the crossing violated those two rules.

Dr. Isaac Morhaim testified concerning the extent of the plaintiff's injuries. As a result of the accident, the plaintiff had sustained a broken fibula and her knees had become swollen. She also received various other lacerations and bruises. Prior to the accident, the plaintiff had suffered from degenerative osteoarthritis in both knees. According to Dr. Morhaim, the accident had aggravated her arthritic condition.

The brakeman on the train which struck Mettler's automobile testified that the train was moving at approximately 4 or 5 miles per hour as it approached the crossing. After the crew saw that the vehicle was stopped on the tracks, the braking system was activated. The brakeman stated that he thought the train was moving at about 2 or 3 miles per hour at the time of impact.

James Sparks, who was employed by the defendant as a roadmaster in charge of track maintenance, was called as a witness for the plaintiff. During the early summer of 1975, the railroad had hired an independent contractor to cut weeds and shrubs adjacent to its tracks. The territory designated for this maintenance encompassed the crossing at Coler Avenue. A short time after this work commenced, the weed mower to be used in this process broke down and further weed cutting efforts were abandoned. No inspections or spot-trimming were, thereafter, undertaken in those areas initially designated for maintenance. Several witnesses testified, without objection from defense counsel, that the trees and shrubs at the Coler crossing were cut down a short time after the accident.

As stated previously, at the close of the evidence, the defendant moved to withdraw portions of count I and all of counts II and III from the jury's consideration. We are concerned here only with the trial court's granting of that motion as it relates to counts II and III.

At trial, the defendant argued that count II failed to set forth a basis or theory of recovery different from that alleged in count I, the negligence count. In other words, it was the defendant's position that its alleged violations of ICC Rules 204, 205, and 206 could not afford a separate basis for recovery under section 73 of the Public Utilities Act. At most, it was asserted, these alleged violations might constitute some proof of negligence on the theory that the regulations evidence a standard of due care owed by the railroad. However, that was essentially the theory

embodied in plaintiff's count I and, therefore, according to the defendant, there was no operative difference between counts I and II.

It was also argued by the defendant that count III should be withdrawn from the jury because under the *Pedrick* standard, a verdict finding the defendant guilty of wilfully violating the ICC rules could never stand. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The trial court accepted this argument and ordered count III withdrawn from jury consideration.

During the jury instruction conference but after the court had granted defendant's motion as to counts II and III, plaintiff tendered a special interrogatory. The interrogatory read as follows, "Did the defendant violate one or more rules of the Illinois Commerce Commission, which violation was a proximate cause of the occurrence in which Margaret Harvey was injured * * *?" Plaintiff at the same time moved that attorney's fees be awarded if, in response to this special interrogatory, the jury found that the defendant violated specified ICC rules in a manner causing her injuries. Defendant objected on the basis that the plaintiff was attempting to amend the complaint to interject a new element of damages. The court refused the special interrogatory and on that basis further denied the plaintiff's motion for an award of attorney's fees.

The parties have presented as an issue on appeal the propriety of the court's refusal of the plaintiff's special interrogatory and the denial of the motion for attorney's fees. Defendant, characterizing the motion as an untimely and prejudicial attempt to amend the complaint to seek additional relief, relies on the principle that the disallowance of a motion to amend will not be overturned absent a clear abuse of discretion.

We do not believe, however, that our cause is aided by analyzing the trial court's ruling in that manner. Treating this particular ruling of the trial court separately ignores the interrelated preceding decisions of the court. Section 73 of the Public Utilities Act, which was the basis of the plaintiff's motion for attorney's fees, provides:

> "In every case of a recovery of damages by any person * * * under the provision of this section, the plaintiff shall be entitled to a reasonable * * * attorney's fee to be fixed by the court, which fee shall be taxed and collected as part of the costs in the case." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 77.

It is apparent from this section that the plaintiff would have been entitled to attorney's fees had counts II and III gone to the jury and the jury had further found in her favor. Thus, the plaintiff's right to recover these fees is inextricably tied to the question of whether the court correctly refused to submit those counts to the jury.

The defendant has raised certain grounds which it contends would support the trial court's withdrawal of count II. Defendant has conceded, however, that these grounds were not presented at trial and were not the basis of the trial court's decision. As we previously set forth, the defendant had argued that count II did not constitute a basis for recovery to the extent it was premised upon a right of action under section 73 of the Public Utilities Act.

This case was tried in March 1978 before the decision in *Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929, was handed down by the Illinois Supreme Court. In *Churchill*, the defendant had argued that section 73, as a basis for recovery of civil damages, did not apply to personal injury actions. The court, however, relying on two Seventh Circuit Court of Appeals decisions and the language of the statute itself concluded "that personal injury actions, arising out of the violation of the ICC's rules on public safety at railroad crossings, are cognizable under section 73 of the Public Utilities Act." 73 Ill. 2d 127, 137, 383 N.E.2d 929, 933.

■■ ■ It is clear that plaintiff's count II should not have been dismissed. The defendant on appeal has in effect conceded as much. Defendant, nevertheless, insists that no prejudice resulted from the court's ruling since plaintiff received adequate compensatory damages under count I. As set forth above, however, if the plaintiff were entitled to recover compensatory damages under the Public Utilities Act, she would have been further entitled to recover attorney's fees as part of the costs of the suit. On this basis, we conclude that the plaintiff is entitled to a trial as to count II of her complaint. If any or all of the defendant's alleged ICC rule violations are found to have been the proximate cause of the plaintiff's injuries, then appropriate attorney's fees should be awarded by the court.

The plaintiff in addition maintains that there should be a retrial as to her compensatory damages because of an error in the instructions. Plaintiff tendered an instruction setting forth the elements of damages as per Illinois Pattern Jury Instructions, Civil, Nos. 30.10-07 (2d ed. 1971). Also tendered was an instruction stating the plaintiff's life expectancy. Both of these instructions were refused by the court. Defendant's proffered instruction on damages, which was given to the jury, was identical to the plaintiff's except that it omitted future pain and suffering as a compensatory element of damages. The plaintiff contends that sufficient evidence of her future pain and suffering was presented to allow the question to have been submitted to the jury by an appropriate instruction.

Dr. Morhaim testified that the accident aggravated the plaintiff's arthritic condition by causing additional degeneration of her knee joints. In his opinion this additional degeneration would be more productive of

pain and this aggravated condition would continue indefinitely. On re-cross-examination, however, Dr. Morhaim stated that over a period of time the aggravation would subside. He further admitted that the plaintiff's preexisting arthritis caused her pain in weight-bearing activities and that, apart from the trauma associated with the accident, she experienced pain from walking, in part, due to her size (she was 5 feet 1 inch tall and weighed over 220 pounds). He also stated that the arthritis alone would have continued to cause the plaintiff pain and discomfort for the rest of her life as the degeneration progressed. Finally, during examination by defense counsel, Dr. Morhaim admitted that he was unable to give an opinion as to how long the aggravation directly associated with the trauma would continue.

On re-redirect, Dr. Morhaim testified that the condition of the plaintiff's knees would not return to the condition they were in prior to the accident. The degeneration of the knee joints attributable to the accident trauma would in his opinion be permanent.

■■ ■ Generally, where expert testimony is given regarding the permanency of an injury an instruction regarding future pain and suffering would be appropriate. (See *McNealy v. Illinois Central R.R. Co.* (1963), 43 Ill. App. 2d 460, 193 N.E.2d 879.) In the present case, Dr. Morhaim's testimony is somewhat contradictory. On the one hand he expressed the view that in time the aggravation of her condition which was the result of the accident would pass. He admitted that he was not qualified to estimate the duration of the aggravation. At the same time, however, the degeneration of her joints caused by the accident, which was productive of pain, would in his opinion be permanent. Although contradictory and less than substantial, this testimony provides some evidence that the aggravation of the plaintiff's condition could cause her future pain apart from that which she would have experienced from her unaggravated arthritic condition. On that basis, the instruction probably should have been given. See *Madison v. Wigal* (1958), 18 Ill. App. 2d 564, 153 N.E.2d 90.

We do not believe, however, that the omission of this instruction caused prejudice to the plaintiff in a manner warranting the retrial of the issue of her compensatory damages. Instructions are to be considered as a whole, and if in that posture they substantially present the applicable law to the jury, they will be regarded as sufficient. (*McKinney v. Illinois Power Co.* (1960), 26 Ill. App. 2d 193, 167 N.E.2d 249.) Here the jury was instructed to compensate the plaintiff for, among other elements, the "aggravation of any pre-existing ailment or condition," the "nature, extent and duration of the injury," and the "pain and suffering experienced as a result of the injury."

■ The substance of Dr. Morhaim's testimony was that the accident had

aggravated the plaintiff's preexisting arthritic condition. Whether that aggravation was permanent or would subside is uncertain. Nevertheless, the jury was instructed to compensate the plaintiff for the aggravation of any preexisting condition for the duration of that injury or aggravation. Nothing contained or implied in those instructions necessarily prohibited the jury from awarding the plaintiff damages for future pain and suffering which they believed was established by the evidence. The jury was adequately instructed.

The plaintiff next asserts that there was sufficient evidence of defendant's wilful violation or violations of ICC rules that count III of the complaint should not have been dismissed. A wilful or wanton act or omission requires a demonstration that the defendant's acts or omissions were committed either with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others. (*Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 211 N.E.2d 720.) The question of wilful or wanton conduct is usually a question of fact. However, if the evidence, when viewed in the light most favorable to the plaintiff, does not tend to show an act done without regard to the safety of others, the question should not be submitted to the jury. *Robertson v. New York Central R.R. Co.* (1944), 388 Ill. 580, 58 N.E.2d 527; see *Pedrick.*

Defendant contends that the evidence fails to demonstrate its knowledge of the violations or proof of prior accidents which would evidence its notice of the violations. Thus, according to the defendant the evidence, at most, would establish its mere noncompliance with ICC regulations. This, it concludes, would only support a finding of negligence.

We have found and the defendant has cited as supplemental authority the recent opinion in *Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 385 N.E.2d 780 (Moran, P. J., dissenting) wherein the Fifth District Appellate Court distinguished *Churchill* from the case before it on the grounds that no proof of prior complaints, accidents, or other evidence was presented from which wilfulness or wantonness could be inferred. We are unpersuaded by *Mathis.* In any event, we view the evidence, particularly as to defendant's alleged violation of Rule 205, in a different light than does the defendant. Pursuant to Rule 205, a railroad is required to keep its right-of-way reasonably clear of unnecessary obstructions for a minimum of 500 feet from a crossing. There was substantial testimony that trees and shrubs, well within 500 feet of the crossing, materially obstructed a traveler's view of approaching trains. Based on the inference from the size and extent of this foliage, it was further demonstrated that these obstructions were probably of a longstanding nature. In addition, the railroad, having designated the

crossing in question for weed-cutting maintenance, was implicitly aware of the potential dangers from foliage obstructions. Thus, in view of the longstanding nature of the obstructions, the railroad's abandonment of this preventative maintenance, and its subsequent failure to inspect those areas where the weed-cutting was to have been performed, a jury might reasonably conclude that the railroad's failure to act was in utter disregard of the danger to public safety.

■■ Because reasonable men could reach differing conclusions, there exists a question of fact as to whether the defendant's failure to trim and maintain the crossing was a mere inadvertent omission or whether it rose to the level of wilfulness or wantonness. The plaintiff is entitled to have count III of its complaint submitted to a jury and for an award of punitive damages if a favorable verdict is obtained.

Finally, since this case will be remanded for trial, we must address plaintiff's contention that the trial court improperly refused testimony of its expert witness. Specifically, she maintains that Berns should have been permitted to offer his opinion that the defendant's railroad crossing violated Rules 204 and 205. Rule 204 regulates the grade and slope approaching a railroad crossing. Berns testified that he had made personal observations of the crossing. The plaintiff offered to prove that, if permitted, Berns would testify that, in his opinion, with a reasonable degree of scientific and engineering certainty the crossing did not comply with the regulations of Rule 204 because the area 24 inches south of the south rail deviated and was higher than the tangent to the top of the rails.

■■ The defendant argues that his opinion evidence was properly refused because it presented an unnecessary conclusion, which was readily within the reach of ordinary jurors. An expert opinion is not rendered objectionable merely because it involves an ultimate issue as to liability. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809, 811.) Expert testimony is proper when the subject matter of the inquiry is of such a character that only persons of special skill or experience in that area are capable of forming a correct judgment with respect to the applicable facts. (*Mahlstedt v. Ideal Lighting Co.* (1915), 271 Ill. 154, 110 N.E. 795.) On the other hand, if the jury is competent to determine the facts in issue, then the expert opinion is of no special assistance to the jury and should not be admitted. *People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709.

■■ Rule 204 in essence requires a roadway surface 2 feet from the outermost rail to be flush with the tangent or level between the tops of the rails. This was essentially the interpretation given the rule by Berns. He further testified that from his observations, the 24 inches south of the south rail was not level to the tops of the rails and that it was several inches higher. Nothing contained in that testimony appears to be beyond

the comprehension of the average juror. His testimony leads to the obvious conclusion that the crossing failed to comply with the specifications of Rule 204. For the expert to expressly make this rather obvious conclusion seems redundant and neither necessary nor of any particular aid or assistance for the jury's understanding of the facts. We find, therefore, no error in the trial court's refusal of plaintiff's offer of proof. We intend, however, to express no opinion or judgment as to the appropriate scope of expert testimony with regard to other aspects of Rule 204.

■■ Finally, with respect to Rule 205, we similarly find that an expert opinion as to whether or not the rule was violated is not warranted. Rule 205 requires a railroad crossing for a distance of 500 feet to be "reasonably clear" of objects which would "materially obscure" a traveler's view of an approaching train. An application of the rule to particular facts is not dependent upon sophisticated formulas or an understanding of technical terminology. Thus, comprehension for the average person would not be unduly difficult. Since whether or not this crossing was in violation of Rule 205 is not an inquiry of such character that only persons of skill or experience would be capable of correctly evaluating the facts, it is not an appropriate subject for expert testimony.

In accordance with the reasoning set forth above, we affirm the judgment of the trial court awarding plaintiff $7,500 compensatory damages and we reverse the order of the court withdrawing counts II and III from the consideration of the jury. This cause is, therefore, remanded for trial with regard to those counts.

Affirmed in part, reversed and remanded in part with directions.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

In examining the liability for punitive damages by reason of the provisions found in section 73 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 77), the opinion embraces the general tort language of "wilful or wanton" conduct. The text of the statute, however, is restricted to the circumstance "if the court shall find that the act was wilful * * *."

Examination of the opinions in *National Bank v. Norfolk & Western Ry.* (1978), 73 Ill. 2d 160, 383 N.E.2d 919, and *Churchill v. Norfolk & Western Ry.* (1978), 73 Ill. 2d 127, 383 N.E.2d 929, discloses that the supreme court carefully restricted such liability to "wilful" conduct as distinguished from "wanton" conduct.

In sum, one finds that each majority opinion uses the words "wilful

and wanton" only when referring to the pleadings or to the arguments of counsel. Each opinion quotes the statutory language supporting the liability only in term of "wilful" conduct or "wilful and wrongful" conduct. *National Bank* states the legislative intent to punish "whenever an injury results from a defendant's wrongful and wilful statutory violation" (73 Ill. 2d 160, 174, 383 N.E.2d 919, 924), and "to punish the tortious public utility for wilfully perpetrating a danger to the traveling public." 73 Ill. 2d 160, 177, 383 N.E.2d 919, 926.

I do not agree that this court should enlarge the boundaries of the language of the statute or of the opinions in *National Bank* and *Churchill.*