THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOLLIE PERRY, Defendant-Appellant.

First District (3rd Division)   No. 84—2872

Opinion filed August 27, 1986.

Steven Clark and Patricia Unsinn, both of State's Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Dean P. Karlos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Following trial, a jury found defendant Dollie Perry guilty of murder. The trial court sentenced her to a 22-year term of imprisonment. Defendant appeals.

On September 5, 1983, defendant, an 18-year-old high school student, attended a Labor Day picnic for three or four hours. She drank some beer and cognac and she smoked some marijuana while she was at the picnic. Around 6 p.m., she returned to the apartment where she lived with her mother, Catherine, her two brothers, her two sisters, and her son, Mark, who was 16 months old. When she came home, Catherine, who had been taking care of Mark on the porch, asked defendant to take him inside so that he could take a nap. Defendant took Mark to her room.

Catherine came in at 6:30 p.m., and she looked in on defendant and Mark. She saw defendant lying on her bed, face down, with a pillow under her stomach. Catherine also saw Mark's legs sticking out from under defendant. She pulled defendant off Mark. She found Mark face up with a plastic shower cap over his face. Catherine called 911. Mark was pronounced dead shortly after he arrived at the hospital.

Police Detective Robert McGuire took defendant into custody at the hospital. After she was taken to Area One police station, defendant agreed to talk to McGuire. At the first interview, at 10:15 p.m. on September 5, 1983, defendant told McGuire that after she came home

she brought Mark into her room and placed him on her bed for a nap. She put cream on her hair and she put a plastic cap over her head, then she laid down on the bed next to Mark. When she woke up, Mark had been taken to the hospital. She did not remember anything else that happened after she laid down. McGuire told her her story was inconsistent, and he again told her to tell the truth. She shrugged and said, "I don't know." An assistant State's Attorney also spoke with defendant that evening; she restated substantially the same story. Defendant was subsequently locked into a cell for the night.

The next day at 2 p.m., police sergeant Joseph Murphy talked to defendant. Defendant told Murphy that after she came home from the picnic, she took Mark into her room and Mark began to cry. She did not want to be Mark's mother any more, so she took a pillow and placed it over the baby's face for about five minutes, until the baby stopped breathing. Defendant repeated this story in the presence of a court reporter, except that she said that she smothered Mark because she was tired of hearing him cry.

At trial, defendant testified that she placed Mark on the bed, sprayed her hair, put a plastic cap on her head and fell asleep on the bed next to Mark. When she woke up someone told her she had to go to the hospital because Mark was sick. She testified that after she told McGuire what had happened, he called her a "lying bitch" and a "murdering bitch." McGuire denied calling her those names. Defendant testified that she did not sleep at all in her prison cell on the night of September 5, 1983.

Defendant further testified that she talked to Sergeant Murphy the next day. He asked her what had happened to Mark after she came home from the picnic, and defendant said she did not know. According to defendant, Murphy then said to her that Catherine had told him defendant killed Mark with a pillow. Murphy testified that he did not say that to defendant. Defendant testified that she cried, and she thought that if her mother said she killed her son, she must have done it. Defendant testified that she then made a statement to Murphy which the court reporter typed up, and which she signed, although she still did not remember what had happened on September 5 between the time she laid down on the bed and the time she woke up and went to the hospital.

The State presented Dr. Robert Kirschner, a forensic pathologist, as an expert witness. Kirschner testified that he examined Mark's body and he reviewed medical and police reports concerning Mark's death. He spoke with Catherine and he inspected defendant's bedroom. He concluded that Mark's death was caused by asphyxiation

due to suffocation. On redirect, the prosecutor asked: "Doctor, as an expert pathologist, did Mark Perry die as a result of an accident?" The court overruled defense counsel's objection to the question. Kirschner answered: "It is my opinion he did not die as a result of an accident." Defendant's motion for a mistrial was denied. In response to hypothetical questions asked on re-cross-examination, Kirschner testified that the baby could pull the shower cap off his mother's head and put it over his own face, and he stated that the baby would become unconscious within "one or two minutes" after its brain stopped receiving oxygen. He testified that the baby would suffer brain death after three to five minutes of oxygen deprivation. Kirschner indicated that he did not believe it was an accident because he could not accept "the assumption that a sleeping mother would take a pillow and roll over on top of an active child and the child would not then be able to make its distress known."

■■ ■ Defendant contends on appeal that the trial court committed reversible error when it allowed Kirschner to testify that in his expert opinion, the death was not accidental.

"Expert testimony is proper when the subject matter of the inquiry is of such a character that only persons of special skill or experience in that area are capable of forming a correct judgment with respect to the applicable facts. [Citation.] On the other hand, if the jury is competent to determine the facts in issue, then the expert opinion is of no special assistance to the jury and should not be admitted. [Citation.]" (*Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 83, 390 N.E.2d 1384.)

We believe that the jury was competent to determine whether defendant could have accidentally rolled over onto her child in her sleep and remain on top of the child for the five minutes needed to suffocate him.

Moreover, there is no indication in the record that Kirschner's expertise extended to determining the ability of a sleeping mother to feel her child. The State argues on appeal that Kirschner was an expert on child abuse because he had a special interest in child abuse, and he once co-authored a presentation regarding child abuse, three years before the trial in this case. The trial court found only that Kirschner was an expert in forensic pathology, and we find that his expertise cannot be construed to cover the question at issue in this case. Therefore, we find that the trial court erred when it allowed Kirschner to testify that in his opinion Mark's death was not the result of an accident.

■ The State argues that this error was harmless because defendant confessed to the crime. At trial defendant testified that the statements in her confession were false, and she presented evidence that the death was accidental. This evidence constituted her principal defense. Kirschner's improper testimony therefore addressed the ultimate issue in the case. Expert testimony tends to "overpersuade in favor of the party introducing it." (*Coffey v. Hancock* (1984), 122 Ill. App. 3d 442, 448, 461 N.E.2d 64.) We cannot say that the jury was not influenced by the introduction into evidence of Kirschner's opinion that the death was not accidental. The improper admission of testimony regarding the central issue in the case, where resolution of the issue required no expertise, prejudiced the defendant.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

RIZZI, P.J., and McGILLICUDDY, J., concur.