THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOLLIE PERRY, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0083

Opinion filed April 22, 1992.

Randolph N. Stone, Public Defender, of Chicago (Cheryl K. Lipton, Karen E. Tietz, and Carol Howard, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Howard D. Weisman, and Rohit Sahgal, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

This is the second time that this case has come before this court for review. Following an earlier trial, wherein the defendant, Dollie Perry, was found guilty of murder, this court remanded the case for a new trial with instructions to the trial court to disallow certain testimony of a pathologist regarding the manner of the victim's death. (*People v. Perry* (1986), 147 Ill. App. 3d 272, 498 N.E.2d 1167.) We considered this testimony to be unfairly prejudicial to the defendant. On retrial, wherein Dollie Perry was found guilty of involuntary manslaughter and sentenced to 8½ years' imprisonment, similar testimony by the same pathologist was allowed admissible over the objections of defense counsel. On appeal, the defense argues that this

testimony was admitted in violation of our prior ruling, and therefore, the case must once again be remanded for a new trial, excluding the testimony at issue. The Honorable William Cousins, Jr., presided over both trials. The defendant has served her original sentence and is no longer in custody.

On September 5, 1983, defendant, Dollie Perry, an 18-year-old high school student, attended a Labor Day picnic and then returned home to care for her 16-month-old son, Mark, who had been previously attended that afternoon by her mother, Catherine Perry. While at the picnic, the defendant consumed unknown quantities of alcohol and marijuana. Upon arriving home at approximately 6 p.m., Dollie laid Mark on the bed in her bedroom, while she applied moisturizer to her hair, covering it with a shower cap. She then lay down on the bed next to Mark to take a nap.

Catherine Perry testified that around 6:30 p.m. she looked in the bedroom and saw Dollie lying across the bed with Mark's feet protruding outward from underneath Dollie's torso. From the waist downward, Dollie's body was not on the bed. Catherine shook Dollie to awaken her, but when she did not respond, she pulled Dollie off of Mark to find a pillow over his face. After removing the pillow, she found Dollie's shower cap over Mark's face and noticed that he was not breathing. Mark was later pronounced dead at the hospital.

Police detective Robert McGuire interviewed Dollie while she was in custody at the police station. At trial, she testified that she told McGuire and an assistant State's Attorney that she did not know what happened to Mark and remembered nothing after lying down on the bed with him. She also said that McGuire continuously called her a "lying bitch" and a "murdering bitch." The next day she was questioned by Sergeant Joseph Murphy. She repeated her story to him and he responded that her mother and the doctor had told the police that she had killed Mark. She claims that it was only after finding this out that she began making self-incriminating statements. She cried and thought if her mother said she killed Mark, then she must have done it.

Sergeant Murphy testified he informed the defendant that Dr. Kirschner, the pathologist, had determined the cause of death to be suffocation due to asphyxiation. He denied telling her that her mother and the doctor said she had killed Mark. After that, he said defendant wanted to tell the "whole story" about what happened to Mark. She said that a short while after laying Mark on the bed, he began to cry. She then placed a pillow over his face and held it there for five minutes. When she removed the pillow the baby was no longer crying or

breathing. When asked why she did it, she replied that she was tired of being Mark's mother and did not want him around any longer. Defendant repeated this story in the presence of a court reporter, except that she stated she smothered Mark because she was tired of hearing him cry.

On the day following Mark's death, Dr. Kirschner, a forensic pathologist, performed the autopsy. Dr. Kirschner performed an internal and external examination of the body as well as an investigation into the circumstances surrounding the death. As part of this investigation, he read the police reports, spoke with police officers and visited the death scene, the home of the defendant, where he spoke with the defendant's mother, Catherine Perry. Dr. Kirschner testified that he could not determine the cause or manner of death based solely upon the results of the autopsy. Immediately following the autopsy, he spoke with police officers about the facts of the case and then prepared a death certificate, listing the cause of death as asphyxiation and the manner of death as "undetermined."

Later the same day, Kirschner visited the defendant's home and spoke with her mother. He testified that Catherine Perry described to him how Mark's legs protruded outward from underneath the defendant's body. She explained that the defendant's body was lying on a pillow and beneath this pillow, on top of the child's face, was a shower cap. After this discussion, Kirschner withdrew the earlier death certificate and issued a new one, changing the manner of death from "undetermined" to "homicide." He also changed his prior description as to the nature of the injury from "lying by mother on bed" to "smothered by mother." He based these changes entirely upon his conversation with defendant's mother, Catherine Perry.

In its closing argument to the jury, the State reiterated Dr. Kirschner's finding of "homicide" and argued that the defendant should be found guilty of killing her son. The State also told the jury that in order to find the defendant not guilty, it would have to find that all of the State's witnesses had lied and engaged in a massive conspiracy to convict the defendant.

When we previously reviewed this case, we reversed and remanded for a new trial, finding that it was reversible error to allow Dr. Kirschner to testify that in his expert opinion Mark "did not die as a result of an accident." At the first trial, Kirschner based his opinion on the fact that he could not accept "the assumption that a sleeping mother would take a pillow and roll over on top of an active child and the child would not then be able to make its distress known." *Perry*, 147 Ill. App. 3d at 275, 498 N.E.2d at 1168.

We previously held that the testimony of Dr. Kirschner invaded the province of the jury, since the jury was competent to determine whether the defendant could have accidentally rolled over onto her child in her sleep and remain there for the five minutes necessary to suffocate him. Moreover, we stated that "there is no indication in the record that [Dr.] Kirschner's expertise extended to determining the ability of a sleeping mother to feel her child." *Perry*, 147 Ill. App. 3d at 275, 498 N.E.2d at 1169.

■ In arriving at this prior holding, we relied upon *Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 390 N.E.2d 1384, wherein the court stated:

> "Expert testimony is proper when the subject matter of the inquiry is of such a character that only persons of special skill or experience in that area are capable of forming a correct judgment with respect to the applicable facts. [Citation.] On the other hand, if the jury is competent to determine the facts in issue, then the expert opinion is of no special assistance to the jury and should not be admitted. [Citations.]" *Harvey*, 73 Ill. App. 3d at 83, 390 N.E.2d at 1390.

The defense contends that Dr. Kirschner's opinion as to homicide, based upon his interview with the defendant's mother, represents nothing more than his own assessment of the credibility of this witness who testified at trial. Therefore, it invades the province of the jury and violates our earlier order, reversing and remanding for a new trial. The State counters that Dr. Kirschner's opinion as to homicide did not interfere with the jury's ability to determine whether the defendant could have *accidentally* rolled over onto Mark in her sleep, suffocating him.

■ In our previous ruling, we held that whether or not Mark's death was the result of an accident was a "central issue" in the case and, therefore, properly left to the jury. We now must decide whether or not the conclusion that Mark died as the result of a "homicide" was a central issue in the case, which should have been properly left for the jury to decide. The accepted legal definition of homicide is death by the agency of another. This definition encompasses both intentional and accidental deaths caused by the agency of another. In a murder case such as this, the State has the burden of proving death by the *criminal* agency of another.

The defense argues that the average jury member, not otherwise versed in legal terminology, equates the word "homicide" with the meaning of "murder," and therefore, this testimony invaded the province of the jury. Moreover, the opinion was unreliable and therefore

inadmissible because it was based upon a conversation with the defendant's mother. The State counters that this was reliable expert testimony properly admissible and that the jury was not required to accept the opinion of Dr. Kirschner.

The defense relies upon the case of *People v. Murphy* (1987), 157 Ill. App. 3d 115, 509 N.E.2d 1323, which held that out-of-court statements made by the defendant's mother were inadmissible hearsay, and although introduced for the limited purpose of having them evaluated by medical experts, they could not be presented to the jury as substantive evidence. The instant case is distinguishable from *Murphy*. In *Murphy*, the defendant's mother was unavailable to testify at trial. In the case *sub judice*, the defendant's mother testified that she saw the defendant lying across her infant son's body. After removing the defendant, she then removed a pillow, sandwiched between the defendant and her son. She also removed a shower cap which was covering the little boy's face. These statements were identical or very similar to the ones relied upon by Dr. Kirschner. No contradictory evidence was presented. The defendant herself does not remember what happened.

■ Dr. Kirschner's opinion as to homicide, caused by the defendant's body being positioned on top of her sleeping son, did not in any way add to the evidence already presented to the jury or assist it in reaching its own conclusions. In fact, it might be construed as prejudicial, since a layperson might equate the word homicide with murder. However, even if the trial court erred by admitting this testimony, such an error may not be prejudicial where other, unquestionably competent evidence in the record is sufficient to prove beyond a reasonable doubt that the death of Mark was caused by the agency of his mother. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112.) The jury was still able to determine whether or not Dollie Perry accidentally rolled over onto her infant son, or whether the infant himself pulled the shower cap over his face.

We next consider whether the closing argument of the State was unduly prejudicial, warranting reversal. In closing argument, the prosecutor stated:

> "Dr. Kirschner *** viewed the death scene *** [and] what did he do after speaking to Catherine? Did he list the manner of death as suicide? Did he list it as an accident? *** After he spoke to her own mother, he listed the manner of death as homicide.
>
> * * *
>
> He wanted to determine the manner of death because that's

his job. And, again, manner refers to the circumstances, suicide, homicide, accident. And what did he do after he concluded the second phase of his investigation at the scene after he talked to her mother? Did he say this was suicide? No. Did he list it as an accident? No. Did he say this was reckless? No. He said it was homicide, and that's his job."

■ Closing arguments which reflect unfavorably on the accused are not improper if based upon competent evidence. (*People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368.) Improper arguments justify reversal when the statements result in substantial prejudice or serve no purpose other than to inflame the jury. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.) In order to find that a closing argument constitutes reversible error, we must find that the questionable language, considered in light of all the evidence of guilt, was a material factor in the conviction and that the verdict would have been different had the language not been used. (*People v. Smith* (1972), 6 Ill. App. 3d 259, 263, 285 N.E.2d 460.) Moreover, a trial court's determination as to the propriety of a closing argument will be sustained absent a clear abuse of discretion. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

■ In *People v. Vasquez* (1969), 118 Ill. App. 2d 66, 254 N.E.2d 617, the prosecutor, in his opening statement to the jury, referred to the coroner's conclusion as to manner of death and equated it with murder. Although the remark may have been improper, the court found the statement not sufficiently prejudicial to warrant reversal. The court also noted that the fact the jury did not find the defendant guilty of murder, but only involuntary manslaughter, vitiated the defense argument that the statement was prejudicial. Regarding another argument, the court also failed to find prejudicial error, when considering the argument in light of the "overwhelming evidence of defendant's guilt" as well as the jury verdict for the lesser included offense of involuntary manslaughter.

Although the testimony of the pathologist and the closing arguments of the State were improper, when considered in light of all the evidence, they are not so prejudicial as to warrant a new trial in this case. The decision of the trial court is hereby affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.