(No. 13319.—Reversed and remanded.)
WILLIAM M. GIBBONS, Defendant in Error, *vs.* ALBERT
HOEFELD, Plaintiff in Error.

*Opinion filed October 22, 1921.*

1. APPEALS AND ERRORS—*the evidence must be considered most favorably to defendant in reviewing judgment for plaintiff on directed verdict.* Where a verdict is directed against a defendant, the evidence, and all inferences which may be reasonably drawn from it in a court of review, must·be considered in the light most favorable to the defendant and all controversies in the evidence must be solved in his favor.

2. LEASES—*when the question of constructive eviction should be submitted to the jury.* Although a basement lease does not require the lessor to make repairs but provides that the taking of possession by the lessee shall be conclusive that the premises are in good repair, yet in an action for rent the question of a constructive eviction because of the lessor's failure to make the basement walls water tight should be submitted to the jury, where the evidence shows that the lessee relied upon the promise of the lessor to make the walls water tight and took possession of the premises after the lessor had assured him that such work had been done, and also shows that the method used by the lessor to perform the work was unsuccessful, and that he refused to try other methods. (*Barrett* v. *Boddie,* 158 Ill. 479, distinguished.)

3. SAME—*landlord's omission need not have been intentional to amount to constructive eviction.* An omission of duty by the landlord which has the effect of depriving the tenant of the enjoyment of the premises need not have been the result of an intent that such should be the effect of the omission, but whether the landlord intended that result is not a determining factor if he willfully refuses to fulfill a promise or so negligently performs it that the tenant is not protected in the enjoyment of the premises.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

ADLER, LEDERER & BECK, for plaintiff in error.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, (PERRY S. PATTERSON, of counsel,) for defendant in error.

Per CURIAM: The circuit court of Cook county rendered a judgment upon a directed verdict for $4000 in favor of the plaintiff. The Appellate Court affirmed the judgment, and a writ of *certiorari* was allowed upon the petition of the defendant to bring up the record for review.

The action was assumpsit on a written lease made by the defendant in error, William M. Gibbons, as lessor of a store and basement known as No. 18 East Jackson boulevard, on the main floor of the Gibbons building, situated at Nos. 18 and 20 East Jackson boulevard, Chicago, for the term beginning March 1, 1913, and ending April 30, 1923, for which the plaintiff in error, the lessee, covenanted to pay rent quarterly in advance, at the rate of $4000 a quarter for the first five years and at a higher rate for the remainder of the term. The lease contained the following provisions:

"(2) That the lessee will use and occupy said premises for his haberdashery and retail clothing business and for no other use or purpose.

"(3) That no representations, except such as are indorsed hereon, have been made to the lessee respecting the condition of said premises. The taking possession of said premises by the lessee shall be conclusive evidence as against the lessee that said premises were in good and satisfactory condition when possession of the same was so taken, and the lessee will at the termination of this lease, by lapse of time or otherwise, return said premises to the lessor in as good condition as when received, loss by fire and ordinary wear excepted.

"(5) That the lessor may enter said premises at all reasonable times for the purpose of making such repairs, additions or alterations therein as he shall deem necessary for

the safety, preservation, enlargement or improvement of said premises or said building; that the lessee will make no alterations in or additions to said premises without first obtaining the lessor's written consent; that all erections, additions, fixtures and improvements, whether temporary or permanent in character, (except only the movable office furniture of the lessee,) made in or upon said premises, either by the lessor or the lessee, shall be the lessor's property and shall remain upon said premises at the termination of this lease, by lapse of time or otherwise.

"(7) That the lessor shall not be liable for any damage, either to person or property, sustained by the lessee or by other persons, due to the building or any part thereof or any appurtenances thereof becoming out of repair, or due to the happening of any accident in or about said building, or due to any act or neglect of any tenant or occupant of said building or of any other person. This provision shall apply especially (but not exclusively) to damage caused by water, snow, steam, sewerage, illuminating gas, sewer gas or odors, and by the bursting or leaking of pipes or plumbing works, and shall apply equally whether such damage be caused by the act or neglect of other tenants, occupants or janitors of said building or of any other persons, and whether such damage be caused or occasioned by any thing or circumstance above mentioned or referred to or by any other thing or circumstance, whether of a like nature or of a wholly different nature."

The defense was set forth in a special plea, averring that at the time the lease was executed, December 11, 1912, the premises were in process of construction and on March 1, 1913, were not ready for occupancy, and for that reason and because the foundation basement walls were not water tight and allowed water to leak into the basement defendant refused to take possession at that time, whereupon the plaintiff agreed that the premises would be ready for occupancy and that he would place the same in good and

satisfactory condition and make the basement walls water tight in consideration of the defendant agreeing to take possession on March 15, 1913, and begin the payment of rent from that time; that on March 15, 1913, the basement walls were not water tight and the basement was not in a tenantable condition, but these facts were latent and unknown to the defendant and he took possession on that date, and afterward the walls of the basement leaked water into the premises occupied by the defendant and rendered them untenantable because of the failure of the plaintiff to make the walls water tight, whereupon the defendant notified the plaintiff that the basement walls had not been made water tight and that water was leaking into the basement and prevented him from conducting his business, and thereupon the plaintiff assured the defendant that he was making the basement and walls water tight and placing them in a tenantable condition, nevertheless the plaintiff failed to make the basement walls water tight until August 25, 1913, but allowed water to leak into the basement from the ground and from parts of the premises in his control, by reason whereof the defendant was compelled to and did remove from the entire premises on that date.

Since the verdict was directed against the defendant, the evidence, and all inferences which may be reasonably drawn from it, must be considered in the light most favorable to him and all controversies in the evidence must be solved in his favor. There was evidence tending to show that on March 1, 1913, the building was not completed and the demised premises were not ready for occupancy; that the basement was wet and there was a leakage of water through the foundation walls into the basement, and for these reasons the plaintiff in error refused to take possession of the premises. The defendant in error promised the plaintiff in error that the condition of the walls would be remedied, and said that it would probably be about the tenth of the month before he would be able to get the premises

water tight and in condition for occupancy but he would do it as quickly as possible, and the plaintiff in error stated that if that was done he would take possession. Later he was notified that the work had been done and he took possession about March 15.

The building was not ready for occupancy March 1, when the term fixed by the lease began, and plaintiff in error was not bound to enter and take possession but might have elected to abandon the lease. The proof tends to show that he was induced not to do so by the promises and representations of defendant in error that he would make the basement walls water tight if plaintiff in error would accept the possession at a later date. Subsequently, defendant in error notified plaintiff in error that he had remedied the defect and plaintiff in error entered into possession. That defendant in error had not done so, or that what had been done was not effective to prevent water coming into the basement, was not apparent, the walls showing only such dampness as is natural in a new wall, and plaintiff in error relying on defendant in error's promise and representations waived his right to abandon the lease and took possession March 15. He put clothing cabinets and other fixtures on the basement floor at a cost of about $5000, and put in a stock of ready-made high-grade clothing of the value of $10,000 or $12,000. On the first floor he put in a stock of haberdashery. The basement continued to be damp from the time plaintiff in error entered into possession, and early in June he notified defendant in error that water was coming through the walls into the basement. Several times during the next two months the water came in in such quantities on the basement floor that it had to be mopped up, and sawdust was used under the show cases where the floor had been mopped. The business was interfered with, the dampness was injurious to the clothing, and after a rain a large part of the floor would be covered with water and business suspended until the water was

mopped up and the clothing taken care of. Defendant in error at different times had contractors undertake to make the walls waterproof by putting on some kind of waterproofing on the inside of the walls. Architects consulted by plaintiff in error were of opinion the walls could not be made water tight by that method, but that the only good that could be accomplished was to open up outside the wall and waterproof the outside of it. Defendant in error was so notified but 'continued to confine his efforts to stop the leaking to the inside of the walls. August 18 a heavy rain flooded the basement floor to a depth of several inches, and plaintiff in error abandoned the premises, removed his goods therefrom, sent the keys to defendant in error, and notified him that he had vacated and surrendered the premises because of his failure to make them tenantable. Defendant in error brought this suit to recover a quarterly installment of the rent, $4000, which by the terms of the lease was due the first day of September.

The lease provided the taking possession by the lessee should be conclusive evidence against him that the premises were then in a good and satisfactory condition. It was the legal duty of defendant in error, in the first instance, to make the premises tenantable for the use for which they were leased, and plaintiff in error was not bound to accept them if that duty had not been performed. If defendant in error had put the premises in tenantable condition in the first place no duty was imposed on him to repair during the term of the lease. The evidence shows the basement walls leaked and that the premises were not tenantable when the term of the lease began; that defendant in error promised plaintiff in error to put them in tenantable condition within a few days, and subsequently notified him that the leaky condition of the walls had been remedied. That defendant in error understood he assumed the duty and obligation to repair the basement walls so as to prevent water leaking through is evidenced by the fact of his.

at different times putting waterproofing material on the inside of the walls after plaintiff in error had entered into possession; also in his answer to the petition for a rehearing, which was granted after a previous opinion had been filed, he concedes he assumed the duty to remedy the leaky walls but contends he successfully discharged that duty as and when complaints were made of water coming through, and no act of his or omission of duty amounted to constructive eviction. We are of opinion defendant in error's liability to repair the walls so as to prevent water coming through into the basement and rendering the premises untenantable is not dependent, alone, on his admission of such liability. Under the facts of this case as to the circumstances under which possession was taken, the terms of the lease cannot be applied the same as if plaintiff in error had accepted possession without the promise and representations referred to. Plaintiff in error in the first instance was under no obligation to take possession under the lease unless the premises were fit to be occupied for the purpose for which they were leased. From this record it appears he did not regard the premises tenantable March 1, and defendant in error did not claim they were. If he had complied with all the lease required of him he could have insisted that plaintiff in error enter into possession or meet the liability he would incur by not doing so. He did not do this but conceded the premises were not in condition for occupancy at the time the term was fixed to begin, and, in effect, said if plaintiff in error would not elect to abandon the lease but would take possession at a later period when the premises had been made fit for occupancy, he would within a few days do the things necessary to make the walls water tight and fit the premises for use. This was consented to by plaintiff in error, and when informed defendant in error had performed his duty and agreement he entered into possession. That defendant in error had not done so is clear from this record, but this was not appar-

ent to plaintiff in error when he took possession, and we must infer he believed defendant in error had done what he agreed to do and what he represented he had done. We do not think under these circumstances the same rule of law is to be applied as would be the case if these promises and representations of the defendant in error had not been made before the premises were accepted. That plaintiff in error entered into possession in the belief that the walls had been made water tight seems conclusively shown by the fact that he incurred large expense in putting in fixtures and also placed on the basement floor a stock of clothing of large value.

It is argued for defendant in error that he was not guilty of any fraud or deception toward plaintiff in error; that he in good faith attempted to perform his duty and agreement to make the walls water tight, and that when complaints were made that they were leaking he endeavored to repair them in such way as to prevent it; that there is no proof of any negligence in the manner he performed the work, and it is earnestly contended that there can be no basis for the defense of constructive eviction. *Keating* v. *Springer,* 146 Ill. 481, and *Barrett* v. *Boddie,* 158 id. 479, are much relied on. In the *Keating case* the court said: "In order to constitute an eviction it is not necessary that there should be an actual physical expulsion. Acts of a grave and permanent character, which amount to a clear indication of intention on the landlord's part to deprive the tenant of the enjoyment of the demised premises, will constitute an eviction. * * * To evict a tenant, according to the original signification of the word, is to deprive him of the possession of the land. But the landlord, without being guilty of an actual physical disturbance of the tenant's possession, may yet do such acts as will justify or warrant the tenant in leaving the premises. The latter may abandon the premises in consequence of such acts or he may continue to occupy them. If he abandons them, then the

circumstances which justify such abandonment, taken in connection with the act of abandonment itself, will support a plea of eviction as against an action for rent." In the *Barrett case* the premises were leased for a saloon and restaurant. The lease covenanted the landlord should not be liable to make repairs, and the acceptance of the premises by the lessee was an acknowledgment that he received them in good repair and the lessee covenants to keep them in repair. The premises were the first floor of a four-story building, and the chimney serving that floor extended up through the other floors to the top of the building. The lessee took possession in December, 1892, and in April, 1893, the chimney became obstructed, would not carry away smoke from the operation of ranges, and the lessee was unable to carry on his business. An investigation disclosed that the obstruction was to that portion of the chimney above the premises leased the tenant. The agents of the landlord, who was a non-resident, were notified that unless the chimney was fixed the lessee would have to abandon the premises. They at first promised to fix it but later refused to do so, and the tenant continued to occupy the premises until some time in June following, when he abandoned them and returned the keys to the agents from whom he leased the premises. The suit was brought to recover the rent from April to November, amounting to $1625. A judgment for plaintiff below was affirmed by this court, the opinion saying, in substance, that to constitute an eviction there must be something of a grave and permanent character done by the landlord for the purpose and with the intention of depriving the tenant of the enjoyment of the premises; that the question is one of fact, dependent on the circumstances of the particular case, to be determined by a jury. In that case the tenant offered to prove that prior to the obstruction of the chimney the landlord had stated to him that he could obtain much larger rental for the premises than the tenant was paying, but the trial court

refused to permit that testimony and this court held that ruling was correct; that the matter offered to be proved was no more than a basis for surmise or suspicion and not evidence, and that under the lease it was not matter of defense. Further commenting on what is necessary to constitute eviction the court said: "It must be by a willful omission of duty or a commission of a wrongful act. Where there is no duty not complied with and no wrongful act committed by the landlord toward the tenant no eviction occurs."

The failure of the defendant in error to make the walls water tight was a wrongful omission of duty he owed to his tenant, and the proof tends to show that by reason of the failure to perform that duty the basement was flooded at different times and the premises rendered untenantable. We do not understand the law to be that an omission of duty by the landlord which has the effect of depriving the tenant of the enjoyment of the demised premises must be shown to have been with the intent that such should be the effect of the omission. Whether the landlord intended that result could not, it seems, in reason be a determining factor if he willfully refused to fulfill his promise or so negligently performed it that what he did was of no benefit in protecting plaintiff in error in the enjoyment of the demised premises. The proof shows that the basement floor was flooded repeatedly,—sometimes to the depth of more than two inches; that the premises were unfit for occupancy; that defendant in error had full knowledge of the facts, and after waterproofing the walls inside and finding that did not stop the water he refused to try any other method, though requested so to do, but continued to use the same methods which had proven failures. In our opinion, whether the facts and circumstances in evidence supported the plea of eviction should have been submitted to the jury. It was a question for the jury whether the failure of defendant in error to remedy the condition was suf-

ficient to constitute a constructive eviction, and the court should not have directed a verdict.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded for a new trial.

*Reversed and remanded.*