GILBERT MAXSON, Plaintiff-Appellee, *v.* FEDERAL BARGE LINES, INC., Defendant-Appellant.

Fifth District    No. 79-17

Opinion filed July 18, 1980.

Theodore J. Williams, Jr., of Thompson & Mitchell, of East St. Louis, for appellant.

Jerome J. Schlichter and David J. Letvin, both of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Federal Barge Lines, Inc., appeals from the judgment of the Circuit Court of St. Clair County, entered on a jury verdict awarding damages for personal injuries to the plaintiff, Gilbert Maxson, in an action brought under the Jones Act (46 U.S.C. §688 (1976)) and the general maritime law.

At the time of the accident, the plaintiff was employed as a deckhand in the crew of defendant's vessel, M/V United States, a tow vessel on the Mississippi River. In the early morning hours of a rainy night near Osceola, Arkansas, a barge containing soybean oil was to be added to the tow. The plaintiff, another deckhand, and the first mate left the M/V United States and proceeded the length of several barges to the head of the tow, which the evidence indicates was poorly lighted. A river tug brought the barge to a space at the head of the tow. The plaintiff and the other deckhand boarded the barge in order to secure it into the tow. As the plaintiff was tightening a cable with a ratchet, he slipped on soybean oil that had been spilled on the deck of the barge and fell. He fell again at a different location on the barge. The witnesses agreed that the oil made footing very difficult. The following morning, the plaintiff left the M/V United States with a master's certificate entitling him to see a Public Health Service doctor. He was subsequently treated for injury to his back at various hospitals.

The defendant contends that the trial court erred in denying its motion for a directed verdict at the close of the evidence on plaintiff's claims of negligence under the Jones Act and unseaworthiness under the general maritime law.

Section 68(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68(4)) provides that a verdict returned by the jury is not reversible if any one of alternative grounds of recovery is sufficient to sustain the verdict. (*Hammonds v. Inland Tugs Co.* (1979), 75 Ill. App. 3d 377, 393 N.E.2d 1328.) Because we have concluded that the trial court did not err in submitting the seaworthiness claim to the jury, we need not consider the propriety of submitting the Jones Act claim.

■■ The "warranty of seaworthiness" consists of the shipowner's absolute duty to furnish a vessel and appurtenances reasonably fit for their intended use. (*Mitchell v. Trawler Racer, Inc.* (1960), 362 U.S. 539, 4 L. Ed. 2d 941, 80 S. Ct. 926.) A shipowner's liability for unseaworthiness is a species of liability without fault, derived from and shaped to meet the hazards imposed by the performance of maritime service, neither limited by conceptions of negligence nor contractual in character, owing to all

within the range of its humanitarian policy. (*Seas Shipping Co. v. Sieracki* (1946), 328 U.S. 85, 90 L. Ed. 1099, 66 S. Ct. 872.) In *Mitchell v. Trawler Racer, Inc.*, an accumulation of slime and gurry on a ship rail, which caused a seaman to slip and sustain injury, was held to be an unseaworthy condition.

The defendant does not dispute the proposition that a sufficient accumulation of oil on the deck of a ship may constitute an unseaworthy condition. Rather, it contends that there was no evidence that it exercised operational control over the barge at the time of the accident, and that it could not be held liable on the unseaworthiness claim in the absence of such evidence. Defendant cites *West v. United States* (1959), 361 U.S. 118, 4 L. Ed. 2d 161, 80 S. Ct. 189; *Lawlor v. Socony-Vacuum Oil Co.* (2d Cir. 1960), 275 F.2d 599, *cert. denied* (1960), 363 U.S. 844, 4 L. Ed. 2d 1728, 80 S. Ct. 1614; and *Moye v. Sioux City & New Orleans Barge Lines, Inc.* (5th Cir. 1968), 402 F.2d 238, *cert. denied* (1969), 395 U.S. 913, 23 L. Ed. 2d 226, 89 S. Ct. 1759, and argues that "[t]hese cases clearly establish the principle that a defendant who does not have operational control of a vessel cannot be held liable for unseaworthiness of the vessel when the transitory condition giving rise to the unseaworthiness arose while the vessel was in the custody or control of a third person."

The plaintiff fell while he was using the ratchet device to remove the slack from a cable, the "breast-wire," that had already been secured to fittings on the barge to be inserted into the tow and a barge that was already secured in the tow. Steve King, the other deckhand, testified he did not remember whether the tugboat that had brought the barge from shore had left prior to the accident or was still holding the barge in place. He stated that usually the tug would leave after the barge was temporarily secured with "lines" (ropes), and then the deckhands would permanently secure the barge with cables.

Contrary to the defendant's contention, it is apparent that the defendant was in the process of exercising "operational control" at the time of the accident. The plaintiff fell in the course of performing the very duties through which the defendant's control over the barge was attained.

Furthermore, the cases cited by defendant do not support the contention that it cannot be held liable for the alleged unseaworthy condition of the barge. In *West v. United States*, the Supreme Court held that no warranty of seaworthiness extended to a shore-based worker on a ship in repair docks, where the work involved was not "ship's work" but rather a complete overhaul of such nature, magnitude, and importance as to require the vessel to be turned over to the repair contractor and docked at his pier for the sole purpose of making the vessel seaworthy. In *Lawlor v. Socony Vacuum Oil Co.*, a shipowner was held liable on unseaworthiness grounds to a shipyard worker in a fall from an improperly

secured ladder owned by the shipyard, where the plaintiff was doing work traditionally done by seamen, where there were no major repairs or extensive changes being made to the vessel as in *West*, and the shipowner was in general control of the vessel, even though the shipyard was in control of the scaffolds and ladders. *Moye v. Sioux City & New Orleans Barge Lines, Inc.* reviewed the above cases and held that there was no warranty of seaworthiness running from a barge owner to a shipyard worker where the owner had completely surrendered control of the barge to the shipyard.

To the extent that these cases establish control of a vessel as a prerequisite to liability for unseaworthiness, they do not preclude liability here, where the accident occurred while defendant was exercising control. Also, there is no question that the plaintiff was engaged in "ship's work."

These cases serve to limit liability of a shipowner to a shipyard worker injured as a result of an unseaworthy condition on the vessel, only where the condition arises and the injury occurs *after* a complete surrender of control by the defendant shipowner to a shipyard for repairs or work not traditionally done by seamen. A different case is presented where, as here, the defendant takes operational control of a vessel owned by another, and one of the defendant's deckhands is injured as a result of an unseaworthy condition existing upon the vessel.

In *Blair v. United States Steel Corp.* (3rd Cir. 1971), 444 F.2d 1390, *cert. denied* (1972), 404 U.S. 1018, 30 L. Ed. 2d 666, 92 S. Ct. 681, a longshoreman fell on an accumulation of ice on the deck of a barge and brought an unseaworthiness claim against his employer, the bailee in exclusive possession of the barge. The court held that the defendant was an owner *pro hac vice* standing in place of the owner for the voyage or service contemplated and bearing the owner's responsibilities.

■■ The case before us is essentially comparable. While the nature of the legal relationship under which the instant defendant assumed control of the barge is unclear, *Blair* appears to hold that the existence of possession and control is a decisive factor in determining whether a party bears the owner's responsibilities for the voyage or service contemplated. Here, the service contemplated included the entry upon the barge by defendant's deckhands for the purpose of securing the barge into the tow. Defendant's contention that the M/V United States could not exercise operational control of the barge until it had been secured in the tow is unpersuasive. The exercise of possession and control over a vessel necessarily includes the efforts required to gain control of it.

The defendant also contends that the soybean oil on the deck of the barge was a "transitory condition" and that the trial court erred in refusing defendant's instructions concerning transitory conditions. There is no

Illinois Pattern Instruction (hereinafter IPI) concerning seaworthiness. However, in *Mitchell v. Trawler Racer, Inc.*, the Supreme Court broadly concluded that liability for a temporary unseaworthy condition is no different than for a permanent condition and that the duty to furnish a seaworthy ship is no less onerous with respect to temporary conditions. The instructions tendered by the defendant are modeled on instructions held proper by the United States Court of Appeals for the Second Circuit in decisions subsequent to *Mitchell*, but involving cases tried prior to *Mitchell*. (*Pinto v. States Marine Corp.* (2d Cir. 1961), 296 F.2d 1, *cert. denied* (1962), 369 U.S. 843, 7 L. Ed. 2d 847, 82 S. Ct. 529, and *Blier v. United States Lines Co.* (2d Cir. 1961), 286 F.2d 920, *cert. denied* (1961), 368 U.S. 836, 7 L. Ed. 2d 37, 82 S. Ct. 32.) However, another Federal circuit court has held that the giving of an instruction concerning transitory conditions was error in light of *Mitchell*. *Grzybowski v. Arrow Barge Co.* (4th Cir. 1960), 283 F.2d 481.

The essential test for determining whether a vessel is seaworthy, that is, whether it is in a condition reasonably fit for its intended use, was adequately stated in the instruction given by the court. To the extent that the defendant's tendered instructions add anything to this test, they tend to be unduly argumentative, contrary to Supreme Court Rule 239(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 239(a)), or merely redundant of other instructions given by the court on issues adequately covered by IPI instructions.

The defendant further contends that the trial court erred by refusing an instruction and verdict forms that would have required the jury to itemize the dollar amount of damage attributable to the plaintiff's negligence, or comparative fault, in the event that they found him contributorily negligent. However, the trial court did give IPI Civil No. 160.13 (2d ed. 1971), which was also tendered by the defendant, instructing the jury that the amount of plaintiff's damages without reference to contributory negligence must be reduced by the proportion or percentage of the negligence or comparative fault attributable to the plaintiff. Defendant cites no authority to support his contention concerning the proposed verdict forms, and we do not believe the trial court erred in refusing them.

The two remaining issues concern evidentiary rulings at trial. Defendant contends that the trial court erred in excluding a portion of an evidentiary deposition of Dr. Ronald Hertel relating to his opinion that the plaintiff probably had a back condition which pre-existed his fall on the barge and accounted for the extent of his injury. The plaintiff points out that this opinion was given in response to a hypothetical question which assumed the existence of X rays of certain vertebral interspaces taken about a month after the accident even though Dr. Hertel had

already stated that the X rays taken at that time were totally inadequate for diagnosis.

There is no dispute as to the general rule that when an expert witness is asked to assume certain matters to be true, those matters must be within the realm of the circumstantial or direct evidence, as supported by facts or reasonable inferences. (*Smith's Transfer Corp. v. Industrial Com.* (1979), 76 Ill. 2d 338, 392 N.E.2d 14.) Defendant argues that the fact that would have been reflected by the assumed X rays was the narrowing of the intervertebral space as of one month after the accident, and that this fact was "clearly supported" by the trial testimony of Dr. John Phillips that X rays taken 3½ months after the injury showed a narrowing, together with Dr. Phillips' opinion that such a narrowing would not occur until about a year after an injury. However, in questioning Dr. Hertel, the defendant repeatedly emphasized the assumption that good quality X rays taken a month after the accident in fact existed. Dr. Hertel's ultimate response was his opinion that the interspace narrowing "* * * could not have developed in a month."

■■ Defendant contends that the exclusion of this testimony was prejudicial because the plaintiff's expert had testified that narrowing could occur within three weeks of the injury. We fail to discern any prejudice, since Dr. Hertel's opinion in the deposition would have been merely cumulative of Dr. Phillips' testimony that in his opinion the interspace narrowing would not occur until about a year after an injury, that it pre-existed the accident, and that it was related to a congenital abnormality.

■■ Finally, the defendant contends that the trial court erroneously admitted a photograph showing plaintiff using a traction device in his home, on the theory that there was no evidence that any physician had prescribed the continuing use of traction at home for the plaintiff's condition. There was evidence that the plaintiff had received traction treatment in hospitals following the injury, and he testified that he used the device at home to relieve pain. We do not believe that the trial court abused its discretion in admitting the photograph, and we find no basis for concluding that the jury assigned any improper weight to this evidence.

The decision of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and SPOMER, J., concur.