FIRST NATIONAL BANK OF EVANSTON, Trustee, Plaintiff-Appellee, *v.* ANNA MAE SOUSANES *et al.*, Defendants-Appellants.

First District (5th Division)    No. 80-1435

Opinion filed May 29, 1981.

Michael F. Harvey, of Wheaton, for appellants.

Michael J. Smith and Patricia Quinn Ford, both of Tenney & Bentley, of Chicago, for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This action was brought under the forcible entry and detainer statute (Ill. Rev. Stat. 1977, ch. 57, par. 1 *et seq.*) to recover possession of certain commercially leased premises and to recover damages caused by defendants' failure to make rent payments. At the close of the evidence, the court directed a verdict in favor of defendant Harvey as executor of the estate of Nicholas Grevan. The jury returned a verdict against Anna Mae Sousanes (defendant Sousanes) and for plaintiff in the amount of $9500. Thereafter, the court granted plaintiff's post-trial motion for a new trial as to defendant Harvey as executor of the estate of Nicholas Grevan.

Both defendants appeal. The issues presented are whether the court erred: (1) in allowing certain instructions to be read to the jury; (2) in refusing to allow the jury to receive the opinion of an expert witness; and (3) in granting plaintiff a new trial as to defendant Harvey as executor of the estate of Nicholas Grevan.

On January 24, 1973, National Boulevard Bank of Chicago (National

Boulevard), as trustee under a trust agreement, entered into a commercial leasing agreement with defendants Anna Mae Sousanes and Nicholas Grevan, a partnership doing business as Elegance Boutique. The agreement provided that defendants would rent a store in the Indian Trails shopping center from June 1, 1973, to May 31, 1983. Rent was to be paid monthly and on a graduated scale. In September 1973, the same parties executed an amendment to the lease reflecting defendants' relocation to a larger store space at an increased rental.

On February 8, 1977, National Boulevard filed a forcible detainer action against Sousanes and Grevan seeking rent payments due from October 15, 1976, to February 1, 1977. Later, the complaint was amended and sought rent payments from October 15, 1976, to April 1, 1977, and attorney's fees and costs.

In June 1977, the court granted plaintiff's motion to be substituted as a party plaintiff in lieu of National Boulevard. Thereafter, the court granted defendant's motion to dismiss plaintiff's cause of action on the basis that the transfer of title from National Boulevard to plaintiff had occurred prior to the filing of the original complaint and that, therefore, the substitution of party plaintiffs was improper. The trial court's order dismissing the action was reversed on appeal and remanded for trial. (*First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 384 N.E.2d 30.) On August 10, 1979, defendants' attorney, Michael Harvey, as executor of the estate of Nicholas Grevan, deceased, was substituted as party-defendant in place of Nicholas Grevan, deceased. The action proceeded to trial.

William Greer, an employee of Quinlan & Tyson, Inc., testified that he was a property manager and leasing agent directly responsible for overseeing shopping center operations, the leasing of space, and the recording of rent payments. As managing agent for plaintiff, he dealt with defendants. He testified that defendants failed to pay rent from October 15, 1976, to May 1, 1977, which amounted to $6745 and that defendants vacated the premises on February 1, 1977, and that defendants also owed an additional $1900 for expenses incurred in reletting the premises vacated by defendants. He never told defendants that the landlord could not fulfill its obligations or responsibilities under the lease. He also stated that the first phase of the shopping center consisting of 10 stores was completed when defendants entered in the leasing agreement and that the second phase was completed in 1977 after defendants vacated the premises. Sousanes asked Greer on several occasions when phase two would be completed. He responded that phase two would be completed and that plaintiff was working on it. He denied ever stating that it would be completed soon. He further testified that he did not discuss the terms and conditions of the lease with Sousanes.

Austin Wyman testified that his law firm represented plaintiff and that the legal fees incurred by plaintiff in this matter amounted to $1718.75 in 1977, $4712.50 in 1978 and $3582.50 through October of 1979. He stated that amounts for 1977 and 1978 were billed and paid but that the amounts for 1979 have not been billed to date. Mr. Wyman also stated that in 1978, the firm spent $100 to $200 correcting a mistake made by one of its former attorneys but this amount was neither billed to its client nor included in the 1978 figure.

Chris Sousanes, husband of defendant Sousanes, testified. He, his wife (defendant Sousanes) and her father (Nicholas Grevan), together with Bill Shosky of Quinlan & Tyson, Inc., were present during the signing of the lease. Although Chris Sousanes glanced at the lease, he was not a party to it nor did he read it. He testified that Shosky told them 20 or more stores would be in the shopping center and that they should do anywhere from $150,000 a year, progressing with the center.

Marge Fry, a saleswoman at defendants' store from 1973 to 1976, testified that she had spoken with Mr. Greer about the completion of the shopping center when he came to collect the rents. Each time he promised to add to the shopping center immediately.

Defendant Sousanes admitted that she signed the lease on January 24, 1973, in the presence of her husband, father, and Mr. Shosky. She also admitted signing the subsequent amendment to the lease. She further testified that Shosky showed her blueprints and an architectural drawing of the center which was supposed to include 30 or 33 stores. At the time she signed the lease, the construction of the center had been started but no part had been completed. Shosky also told her that her store should do anywhere from $150,000 worth of business. She stated a billboard put up on the property indicated that there would be 20 to 25 stores in the plaza. At the signing of the lease Mr. Shosky told her that phase two would be started in June. But in July phase two had not been started. She further testified that Elegance Boutique was a partnership between herself and her father, Nicholas Grevan, now deceased. She admitted that she did not pay rent from October 15, 1976, to May 1, 1977, and that they abandoned the premises in February of 1977.

Richard Walsh, a real estate broker, called as an expert witness by defendant, testified that the uniqueness of a shopping center is that it is an association or joining together of merchants in one large, well-maintained site so that customers could shop at one central location rather than numerous separate locations. He stated the larger the mix the better the shopping center for both tenants and customers. He stated that a business leasing space in a shopping center rents a part of a whole shopping center. Walsh was not permitted to express his opinion to a hypothetical question regarding constructive eviction posed by defendant's counsel.

At the close of all the evidence, the court allowed the motion of the estate of Nicholas Grevan for a directed verdict. Thereafter, the jury returned a verdict for plaintiff against defendant Sousanes in the amount of $9500. Plaintiff's motion for a new trial as to the estate of Nicholas Grevan was granted.

OPINION

I

Defendant Sousanes first contends that the court erred in instructing the jury as to the law of constructive eviction.

Constructive eviction is defined as something of a serious and substantial character done by the landlord with the intention of depriving the tenant of the beneficial enjoyment of the premises in accordance with the terms of the lease. Unless the premises are vacated, there is no constructive eviction. (*City of Chicago v. American National Bank* (1980), 86 Ill. App. 3d 960, 408 N.E.2d 379; *American National Bank & Trust Co. v. Sound City, U.S.A., Inc.* (1979), 67 Ill. App. 3d 599, 385 N.E.2d 144; *John Munic Meat Co. v. H. Gartenberg & Co.* (1977), 51 Ill. App. 3d 413, 366 N.E.2d 617; see also *Automobile Supply Co. v. Scene-In-Action Corp.* (1930), 340 Ill. 196, 172 N.E. 35; *Gibbons v. Hoefeld* (1921), 299 Ill. 455, 132 N.E. 425.

Instruction No. 10 which was given provided, in pertinent part:

"In this case, defendants have asserted the affirmative defense that plaintiff had a duty under the lease to build additional stores at the Indian Trail Shopping Center; that plaintiff breached this duty; that plaintiff's breach of this duty is a serious and substantive conduct on the part of plaintiff and was done by plaintiff with the *intention* of depriving defendant of her leasehold interest; and finally, that defendant gave up possession of the leased premises within a reasonable time after plaintiff breached its duty." (Emphasis added.)

Relying on *Gibbons v. Hoefeld*, defendant Sousanes maintains that the court erroneously included the requirement that the landlord must intend to deprive the tenant of his enjoyment of the demised premises. Unlike defendant suggests, *Gibbons* did not eliminate "intention" as a necessary element of constructive eviction. The court merely held that whether a landlord intended a specific result was not a determinative factor if it could be shown that the landlord wilfully refused to perform or so negligently performed his promise that what he did was of no benefit in protecting the tenant in the enjoyment of the demised premises. 299 Ill. 455, 464, 132 N.E. 425, 429.

■■ Accordingly, the court did not err in including the element of intention in the instruction given to the jury as to the law of constructive eviction.

## II

Sousanes next contends that the court erred in instructing the jury, over objection, to determine the amount of attorney's fees to be awarded as damages in the prosecution of this lawsuit, contrary to the lease which provides that the attorney's fees to be awarded lessor be fixed by the court. Plaintiff maintains that this contention is without merit since defendant requested that the jury be permitted to determine reasonable attorney's fees.

While Sousanes correctly asserts that the parties' lease provides that reasonable attorney's fees in favor of the lessor are to be fixed by the court for any proceeding to enforce the provisions of the lease, she took an inconsistent position at trial. During the conference on instructions the court specifically questioned defense counsel whether attorney's fees were a proper element of damages for the jury to determine and whether there was any objection to the jury deciding reasonable attorney's fees. Defense counsel responded, "Yes, I am going to let them [the jury] decide it." The court then cautioned defense counsel that it did not think the jury should be concerned with attorney's fees but that the court should make this determination after the jury returns a verdict. Defense counsel again indicated a willingness to have the jury determine the question of attorney's fees but stated that plaintiff should be precluded from asking for fees in excess of $1900. For the third time the court inquired whether defendant was objecting to attorney's fees as being a proper element of damage. Defense counsel again responded,

> "Not at all. For the record, I am not objecting to the instruction on the basis that he's [plaintiff] asking for them [the jury] to return a reasonable attorney fee. I'm not objecting to that. I am only asking that he [plaintiff] be limited up to $1,900. That's all that he proved and nothing else.
> "* * * For the record, I want the jury to determine—He put it in his case in chief. He is asking for it. I want the jury to determine it. I say, though, the jury should be instructed up to $1,900 and that's all that he proved."

Thereafter, the court permitted the jury to determine reasonable attorney's fees incurred in the course of this litigation. However, the court denied defendants' motion to set a $1900 limit on attorney's fees, stating that plaintiff paid attorney's fees of $1718.15 in 1977, $4700 in 1978, in addition to the 70 hours of work expended in 1979 which had not to date been billed.

■■ The rule is well settled that a party may not assert error on the basis of instruction which he has caused to be given to the jury. *Ervin v. Sears Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500; *Sola v. City of*

*Chicago* (1967), 82 Ill. App. 2d 266, 227 N.E.2d 102; see also *Lynch v. Board of Education* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.

On appeal, Sousanes does not maintain that the court erred in failing to instruct the jury that attorney's fees should not exceed $1900 but rather now contends that it was error to permit the jury to determine reasonable attorney's fees since the parties' lease provides that the court should make this determination. A similar argument was addressed in *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242. There, one of the defendants during the conference on instructions objected to an instruction on the basis that it took the loan servant question from the jury. That defendant specifically stated that he was not objecting to the instruction on the basis that the servant was not acting within the scope of his employment. On appeal, the defendant argued that the court erred in giving the instruction because it removed the questions whether the servant was acting outside that scope of his employment and whether the servant was on loan to another on the day of the accident. *Richard*, noting that objections to jury instructions must be specifically stated at trial (see also Ill. Rev. Stat. 1977, ch. 110A, par. 239(b)) or they cannot be raised on appeal, stated that if a party objects to instructions for one reason at trial, he cannot raise different reasons for his objection on appeal. (66 Ill. App. 3d 825, 832, 383 N.E.2d at 1249.) That court held that since defendant objected to the instruction solely on the grounds that servant was on loan to another, it would not consider the objection as to the scope of employment.

● 3 Since Sousanes did not object at trial to the instruction on the basis that the court erred in permitting the jury to determine reasonable attorney's fees contrary to the provisions of the parties' lease, the alleged error is not preserved for review. See *Raabe v. Maushak* (1977), 55 Ill. App. 3d 169, 371 N.E.2d 96.

III

Sousanes next contends that the trial court erred in refusing to allow Richard Walsh to express an expert opinion on a hypothetical question as to whether the landlord had complied with his obligations under the lease.

Plaintiff's objection was sustained to the following hypthetical question asked of Walsh by defendants' attorney:

"Assume a shopping center did not get built, that a man such as yourself, or from a large real estate corporation such as Quinlan & Tyson came out and solicits tenants, or has a tenant solicit him, and procures a lease to give to the tenants, and tells that tenant the following: that there will be over 28 stores in the mix, and that you will be the only exclusive dress shop and that the stores are being

built right now, and you should take possession in July; that the stores will have anchor tenants as you have testified such as Goldblatts, Dominicks and so on, and assume further that in fact the shopping center is entered upon by the tenants, and assume further that in fact the 28 stores are not leased nor built, and assume further that only 7 or 8 stores of the proposed 28 are leased.

Now, Mr. Walsh, do you have an opinion based on a reasonable degree of your expertise in the field of real estate and management, whether or not the landlord has complied with his obligations under the lease?"

■■ Expert testimony is permitted when: (1) the opinion of the witness is distinctively related to a science, profession, business or occupation and is beyond the knowledge or experience of an average juror; (2) the witness has sufficient skill, knowledge or experience in that field so that his opinion will aid the trier of fact in the search for truth; and (3) the state of the art or scientific knowledge permits a reasonable opinion to be asserted by an expert. (*Crump v. Universal Safety Equipment Co.* (1979), 79 Ill. App. 3d 202, 398 N.E.2d 188; see also *Crabtree v. St. Louis-San Francisco Ry Co.* (1980), 89 Ill. App. 3d 35, 411 N.E.2d 19; *Allen v. City of Ottawa* (1980), 80 Ill. App. 3d 1032, 400 N.E.2d 629.) The knowledge required to qualify one as an expert may be obtained from study, experience or both. (*Allen v. City of Ottawa.*) The qualification of a witness to testify as an expert is within the sound discretion of the court and is relative to the particular circumstances of the case. (*Allen v. City of Ottawa; Crabtree v. St. Louis-San Francisco Ry. Co.*) An expert opinion is not rendered objectionable merely because it involves an ultimate issue as to liability. (*Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 390 N.E.2d 1384; *Crump v. Universal Safety Equipment Co.*; contra, *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) Nonetheless, when an expert witness is asked to assume certain matters to be true, those matters must be in the realm of circumstances or direct evidence, as supported by the facts or reasonable inferences. (*Smith's Transfer Corp. v. Industrial Com.* (1979), 76 Ill. 2d 338, 392 N.E.2d 14; *Maxson v. Federal Barge Lines, Inc.* (1980), 86 Ill. App. 3d 423, 408 N.E.2d 58.) However, where the jury is competent to determine the fact in issue, then the expert opinion is of no special assistance to the jury and should not be admitted. *Harvey v. Norfolk & Western Ry. Co.*

At trial, Walsh testified that he had worked since 1973 in the real estate business as a broker, property manager and court-appointed receiver. The trial court stated that Walsh was not an expert as to whether the landlord breached the contract, but even assuming such expertise, he could not express an opinion as to the ultimate issue which was whether

the landlord breached the lease agreement. The court further stated that the facts presented were not beyond the capability of the jury to understand and determine without expert testimony.

■■ The lease in the instant case is a standard commercial lease. The facts were not technical nor beyond the understanding of the average juror. As such, special knowledge or expertise was not necessary for the jury to determine whether or not the facts established plaintiff's performance of its obligations under the lease. Accordingly, the court did not err in refusing to allow Walsh to state his opinion.

## IV

Finally, defendants contend that the court erred in granting a new trial as to defendant Grevan. Defendants argue that Grevan was originally directed out of the case because not one scintilla of evidence was introduced against him. They submit that all the evidence taken in the light most favorable to the plaintiff so overwhelmingly favors a directed verdict in favor of Grevan that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R. R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Defendants maintain that this clearly is not the case.

A few months prior to trial, defendants' attorney informed plaintiff that Nicholas Grevan had died. Thereafter, plaintiff filed a motion to substitute Michael Harvey as executor of the estate of Nicholas Grevan in place of Nicholas Grevan. Michael Harvey was also defendants' attorney in this action. This motion was granted without objection. Ill. Rev. Stat. 1979, ch. 110, par. 54(2).

At the close of all the evidence, defendants' attorney moved for a directed verdict as to the estate of Nicholas Grevan on the basis that "there is not a scintilla of evidence that was introduced in this case obligating the Estate of Nicholas Grevan, Deceased, to the plaintiff or its agents." Thereafter, defendants' motion was granted on the basis that there had been no evidence to establish the existence of the estate.

■■ In the instant case the trial judge who granted defendants' motion for a directed verdict was not the same judge who granted plaintiffs' motion to substitute Michael Harvey as executor of the estate of Nicholas Grevan in place of the deceased. It appears that the trial judge was unaware that the substitution of parties had been previously granted without objection. It has long been established that where the existence of an estate or the identity of its executor is not put in issue by the pleadings of a party, the party is precluded from raising those issues at a subsequent time. (*Larson v. Lybyer* (1941), 312 Ill. App. 188, 38 N.E.2d 177; *Berghoff v. Cummings* (1922), 225 Ill. App. 1; *Harte v. Fraser* (1902), 104 Ill. App. 201.) Upon being sufficiently apprised of previous court proceedings, the trial court could properly take judicial notice of the existence of the estate of

Nicholas Grevan since it was "capable of immediate and accurate demonstration by resort to easily accessible sources of undisputable accuracy." *People v. Davis* (1976), 65 Ill. 2d 157, 161, 357 N.E.2d 792.

On appeal, defendants do not contend that Michael Harvey, as executor of the estate of Nicholas Grevan, was improperly substituted nor do they maintain that the estate of Nicholas Grevan was not obligated to plaintiff. Rather, defendants argue that the motion for a new trial was improperly granted because there was no evidence presented against Grevan. A review of the record belies this contention.

The lease and its amendment, upon which plaintiff's cause of action was based, was admitted into evidence. This lease specifically provides that the leasing agreement was between National Boulevard and Elegance Boutique, a partnership called "tenant." Sousanes admitted she signed the lease in the presence of her husband, father and Mr. Shosky. She further testified that Elegance Boutique was a partnership between herself and her father, Nicholas Grevan, now deceased. Sousanes' husband also testified that Nicholas Grevan was present during signing of the lease.

■■ Furthermore, defendants' own pleadings establish that Sousanes and Grevan operated a partnership doing business as Elegance Boutique. Defendants' answer to plaintiff's complaint which raised the affirmative defense of constructive eviction specifically states that "defendants and counter-plaintiffs, *Anna Mae Sousanes* and *Nicholas Grevan,* d/b/a *Elegance Boutique* * * * entered into an indenture of lease * * * to sell women's fashions, a copy of which is attached to plaintiff's Complaint as Exhibit A." Once a statement of fact has been admitted in pleadings, it is binding on the party making it, and it makes it unnecessary for the opposing party to introduce evidence in support thereof because it has the effect of withdrawing the fact from issue. *State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718.

■■ Accordingly, there was sufficient evidence presented against Nicholas Grevan to submit the question of liability to the jury.

V

For the reasons stated, the judgment in favor of plaintiff and against defendant Sousanes and the order granting a new trial as to defendant Harvey, as executor of the estate of Nicholas Grevan, deceased, are affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.